# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

_____

| | | |
|---|---|---|
| Joshua Jeter, #314407, | ) | C/A No. 2:13-460-JMC-BHH |
| | ) | |
| | ) | **RESPONSE TO MOTIONS** |
| Petitioner, | ) | **TO STAY** |
| vs. | ) | |
| | ) | |
| Warden, Perry Correctional Institution, | ) | |
| | ) | |
| Respondents. | ) | |

_____ )

  The Respondent, above-named, by and through the undersigned attorneys, hereby makes a Response to the Motions to Stay filed April 22, 2013 [Document # 10] and June 6, 2013 [Document 19] pursuant to the June 7, 2013 text order of the Honorable Bruce Howe Hendricks, United States Magistrate Judge.

  At the outset, Respondent submits that the decision in <u>Miller v. Alabama</u>, 132 S.Ct. 2455 (2012) does not provide for relief to the Petitioner because, unlike the parties in <u>Mill</u>er, Jeter faced a possibility of 30 years or life sentence and the state court considered the Petitioner youth, in addition to other mitigating factors such as his cooperation and remorse prior to deciding on a sentence of life without parole. Respondent further argues herein that the Miller decision is not retroactive to the Petitioner's case. For these and other reasons, Respondent submits that the granting of the motion to stay and abey may not be appropriate. The Respondent would show this Court the following:

### I.

  On April 22, 2013, the Petitioner *pro se* made a motion to stay the habeas proceedings.

1

[Document No. 10]. In the motion, he claimed that he is currently in a class action appeal and that he was just appointed a pro bono lawyer and that he had filed a post-conviction relief application in the Court of Common Pleas. Respondent had no record of either when the Return o0f May 29, 2013 was filed and advised the Court of the deficiency in its return.

Respondent also advised the Court in its earlier return that Respondent are aware of a pending certiorari proceeding pending in the South Carolina Supreme Court, Tyrone Aiken, et al v. William Byars, Jr. Director of SCDC, Appellate Case No. 2012-213286, where the Supreme Court granted certiorari concerning juvenile sentencing to life without parole for the crime of murder which is in the briefing stage pursuant to a May 6, 2013 order. In that order, the Supreme Court had granted the petition for writ of certiorari with the exception of petitioner's request that the Court determine the constitutionality of sentencing juvenile offenders to life imprisonment without the possibility of parole." The Petitioner is not specifically named as a party in that action. That matter remains in a briefing stage at this time. (See Below for named Respondents).

On June 6, 2013, Petitioner made a second motion to stay [Document 19] asserting that he seeks to stay his pending federal habeas proceedings because he recently had an application for post-conviction relief filed in his behalf in the Spartanburg County Court of Common Pleas. In that document, Jeter again asserts that he is a member of a "class member" in an original habeas corpus action pending before the South Carolina Supreme Court in which certiorari has been granted. He claims, pursuant to Rhines v. Weber, 544 U.S. 269 (2005) that his pending federal habeas action should be stayed and held in abeyance.

On June 6, 2013, the Petitioner also filed a motion to amend his original habeas corpus action [Document 18], alleging for the first time within the proceedings three new and additional claims

that he asserts were never raised in the earlier proceedings, but he generally claims are presented in two pending state court actions. In the proposed amendments he raises the following allegations that were raised and addressed in the original Return:

I.      Ineffective Assistance of Counsel

      A.      Failure to advise of desirability of accepting or rejecting a plea bargain.

II.     Ineffective assistance of counsel.

      A.      Failure to ask for a severance trial.

III.    Ineffective assistance of counsel.

      A.      Failure to argue changed appearance.

IV.     Indictment and Information.

      A.      I did not receive any indictments, warrants or information for the charges of first degree burglary, attempted armed robbery, and possession of a weapon.

In the proposed amendment, he additionally alleged:

V.      Petitioner's sentence of life without parole, imposed for a crime he committed when he was a juvenile, violates the Eighth Amendment to the United States Constitution.

VI.     Petitioner's sentence of life imprisonment without parole violates the Eighth Amendment to the United States Constitution because the proceedings which led to the imposition were both procedurally and substantively inadequate.

Document 18.  Within the amended petition, he claims that new grounds five and six had not been presented to the state's highest court because the grounds rely on newly established Supreme Court precedent in Miller v. Alabama, 567 U.S. _ , 132 S.Ct. 2455 (June 25, 2012).

A.

On June 12, 2013, the Attorney Generals Office received a copy of an application for post-

conviction relief, filed in the Spartanburg County Clerks Office on May 30, 2013, the day after the Respondent's Return. (Copy attached). The May 30, 2013 application was apparently mailed on the Petitioner's behalf by Joshua S. Nasrollahi from Greenwood, South Carolina, a member of the South Carolina Bar. The Respondent's return to the matter is not been due and has not been filed at the time of this federal filing. Contrary to the representation in the Petitioner's document claiming that he "had received a summary judgment from the state," counsel within the Office of the Attorney General handling Mr. Jeter's matter are not aware of any order of summary judgment for or against the petitioner and have not sought such at this time. A view of the online records of the Spartanburg County Clerks Office related to Jeter v. State, 2013-CP-42 - 2353 only shows that the application was filed on May 30, 2013 and no other action. (Copied attached).

In Jeter v. State, 2013-CP-42-2353, the application sets fourth the following grounds:

10 (a).      Applicant's sentence of life without parole, imposed for a crime he committed when he was a juvenile, violates the Eighth Amendment to the United States Constitution and Article I, § 15 of the South Carolina Constitution.

10(b).       Applicant's sentence of life imprisonment without parole violates the Eighth Amendment to the United States Constitution and Article I, § 15 of the South Carolina Constitution as excessive and cruel and unusual punishment because he was both a juvenile and a person who did not kill or intend to kill the victim.

10 ( C ).    Applicant's sentence of life imprisonment without parole violates the Eighth Amendment to the United States Constitution and Article I, § 15 of the South Carolina Constitution because the proceedings which led to the imposition were both procedurally and substantively inadequate.

10 (d)       Applicant was denied the right to the effective assistance of counsel effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article 1 §§ 3 and 14 of the South Carolina Constitution, because Applicant's counsel failed to develop and present mitigating evidence which would have warranted a sentence of less

4

that life without parole.
Application, p. 2-8.

In the South Carolina Supreme Court's original jurisdiction, an action styled TYRONE AIKEN, Matthew Clark, Eric Graham, Bradford M. Haigler, Angelo Ham, J'Corey S. Hull-Kilgore, Damian Inman, Roger Legette, Terriel Mack, Jennifer L. McSharry, Wallace Priester, Davon Reed, Dondre M. Scott, Edgar L. Thomas, James Vang, et al, PETITIONERS v. WILLIAM R. BYARS, JR., Director, South Carolina Department of Corrections, and ALAN WILSON, Attorney General of South Carolina, RESPONDENTS was filed. The Petition for Writ of Certiorari ask the Court: (1) to accept this matter for consideration in its original jurisdiction, and (2) to grant certiorari to resolve several constitutional issues allegedly raised by the United States Supreme Court's recent decision in Miller v. Alabama, ___ U.S. ___, 132 S.Ct. 2455 (2012). In particular the headings of the Petition were the following:

> The United States Supreme Court's recent decision in Miller v. Alabama calls into question the legitimacy of a life without parole sentence for any crime committed by a juvenile , mandates that all juveniles who have [been] sentence to life without parole be resentenced, and requires that this Court to establish constitutionally adequate procedures for sentencing juvenile offenders.

> I.   Overview of the Supreme Court's decisions involving juvenile offenders.

> A.   Whether the Eighth Amendment precludes life imprisonment without the possibility of parole for juvenile offenders?
> B.   Whether all juveniles sentenced to life imprisonment without the possibility of parole are entitled to a new sentencing proceeding?
> C.   What procedures are required where life imprisonment without the possibility of parole is a sentencing option?

On November 28, 2012, Respondents filed a Return to Petition for Writ of Certiorari asking the Supreme Court to decline to accept this matter in its original jurisdiction, and to deny and dismiss

5

the Petition with prejudice.  On December 5, 2012, Petitioners submitted a "Reply to Return to Petition for Writ of Certiorari" attacking portions of the Return and essentially arguing it would be "inefficient and a waste of scarce resources" if the Court does not grant certiorari, attempt to predict future Eighth Amendment jurisprudence, and extend <u>Miller</u> to a constitutional question explicitly reserved by the United States Supreme Court. On February 28, 2013, Petitioner submitted a "Supplement to Petition for Writ of Certiorari" in an effort to "alert this Court to a series of relevant legal developments that have occurred since the petition was filed . . . ." The Supreme Court granted certiorari concerning juvenile sentencing to life without parole for the crime of murder which is in the briefing stage pursuant to a May 6, 2013 order. In that order, the Supreme Court of South Carolina granted the petition for writ of certiorari with the exception of petitioner's request that the Supreme Court "determine the constitutionality of sentencing juvenile offenders to life imprisonment without the possibility of parole."

B.

The Petitioner, Joshua Jeter, #314407, is presently confined at the Perry Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Spartanburg County Clerk of Court. **According to the sentencing sheets, the Petitioner was born December 10, 1987. The crimes occurred December 8, 2004**. **Therefore he would not have been 18 until December 10, 2005.** Jeter was indicted at the February 24, 2005 term of the Court of General Sessions for Spartanburg County for murder (05-GS-42-0888) involving the December 8, 2004 murder of Tavaris Howze.  He was subsequently directly indicted on June 23, 2005 for burglary in the first degree [05-GS-42-2628], on August 25, 2005 for armed robbery [05-GS-42-3711], and on February 23, 2006 for possession of a pistol by a person under the age of twenty-one [06-GS-42-

6

0880]. His co-defendant, Lance Lyles was similarly indicted. The Petitioner was convicted on March 17, 2006 of murder, unlawful possession of a pistol by a person under the age of 21, attempted burglary in the first degree, and attempted armed robbery. Tr. 725.

After conviction, a plea in mitigation was made. The state had advised the court that the Petitioner had a minor juvenile record for disturbing schools and assault and battery of a school official in June 2003. App.p. 728. His counsel advised that court that Petitioner was 17, had a small child and had lots of family support in the courtroom. App.p. 728. She noted that Petitioner had wanted to plead guilty to manslaughter and had always been forthcoming on the fact that he was there and the fact that he had the gun. App.p. 728. She asked the Court to give the minimum as far as the murder charge and to let everything run concurrent with that. She stated that he was 16 when the crime happened. She declared that ir did not excuse his actions, but that he had come forward and talked to the police with a statement. App.p. 729. She stated that the Petitioner did not intend to kill that night . She stated that he was very sorry for what happened and desired to express his sorrow to the Howze family. She noted that he would have plead to manslaughter, but that th solicitor would not allow it without both agreeing to plead. App.p. 729.

The Petitioner made a personal plea to the Court. He stated that he was sorry for th situation and wanted to "turn back the hands of time." He stated that he was sorry and continued to pray for the victim's family. App.p. 729-730.

He was sentenced to life for murder, ten (10) years for attempted burglary in the first degree, twenty (20) years for attempted armed robbery, and five (5) years for unlawful possession of a pistol by a person under the age of twenty-one (21). App.p. 732-733. A motion to alter or amend the sentencing order was denied on April 11, 2006.

A timely Notice of Appeal was filed on Petitioner's behalf and an appeal was perfected. The South Carolina Court of Appeals affirmed Petitioner's conviction and sentence. State v. Jeter, Op. No. 2008-UP-587 (S.C. Ct. App. filed October 15, 2008). App.p. 797-799.  The Remittitur was issued on **November 26, 2008.**

The Petitioner made an application for post-conviction relief on **March 4, 2009.** Jeter v. State, 2009-CP-42-01221.  An evidentiary hearing into the matter was convened on May 26, 2010, at the Spartanburg County Courthouse before the Honorable J. Mark Hayes, Presiding Judge. App.p. 814-862.  Vanessa Cason, Esquire, represented the Petitioner.  Suzanne H. White, Esquire, of the South Carolina Attorney General's Office, represented the Respondent.

On July 28, 2010, Judge Hayes entered his written order of dismissal. App.p. 863-871.

The Petitioner made an appeal from the denial to the South Carolina Supreme Court. On December 13, 2012, the South Carolina Court of Appeal entered its written order denying the petition and granting counsel's request to withdraw after review pursuant to Johnson v. State, supra. Joshua Jeter, Petitioner, v. State of South Carolina, Respondent, Appellate Case No. 2010-170031 , Order (S.C. Ct App. December 13, 2012) (order denying certiorari and granting request to withdraw). The remittitur was issued on January 2, 2013.

Respondent attaches and incorporates herein by reference the following additional attachments :

1.    Jeter v. State of South Carolina, 2013-CP-42-2353, Application for Post-conviction Relief, filed May 30, 2013.

2.    Spartanburg County Clerk of Court Online Records for Jeter v. State of South Carolina, 2013-CP-42-2353.

3.    Spartanburg County Clerk of Court Selected General Sessions Indictments and

Sentencing Sheets.

Materials from <u>Tyrone Aiken, et al v. William  Byars, Jr. Director of SCDC</u>, Appellate Case No.

2012-213286.

4.    <u>Tyrone Aiken, et al v. William  Byars, Jr. Director of SCDC</u>, Appellate Case No.

2012-213286, Petition for Writ of Certiorari, October 29, 2012.

5.    <u>Tyrone Aiken, et al v. William  Byars, Jr. Director of SCDC</u>, Appellate Case No.

2012-213286, Return to Petition for Writ of Certiorari, November 28, 2012.

6.    <u>Tyrone Aiken, et al v. William  Byars, Jr. Director of SCDC</u>, Appellate Case No.

2012-213286, Reply to Return to Petition for Writ of Certiorari, December 5, 2012.

7.    <u>Tyrone Aiken, et al v. William  Byars, Jr. Director of SCDC</u>, Appellate Case No.

2012-213286, Petitioner's Supplement to Petition for Writ of Certiorari, dated

February 28, 2013.

8.    <u>Tyrone Aiken, et al v. William  Byars, Jr. Director of SCDC</u>, Appellate Case No.

2012-213286, Motion to Strike / Return to Supplement to Petition for Writ of

Certiorari, dated April 2, 2013.

9.    <u>Tyrone Aiken, et al v. William  Byars, Jr. Director of SCDC</u>, Appellate Case No.

2012-213286, Order, Supreme Court of South Carolina (May 6, 2013) (order

granting certiorari, denying motion to strike and setting briefing schedule).

10.    <u>Tyrone Aiken, et al v. William  Byars, Jr. Director of SCDC</u>, Appellate Case No.

2012-213286, Petitioner's Initial Brief (June 10, 2013).

II.

9

**Sentencing for Murder in South Carolina**.

The Petitioner was not subject solely to a possibility of a mandatory sentence of life without parole as a result of his conviction on murder on March 17, 2006. The Petitioner was defined as an adult as a matter of state law for the crime of murder and transfer from the family court was not required. See S. C. Code Ann., § 63-19-20(1) (child or juvenile defined). In 2006, the crime of murder carried a punishment as follows: "(A) A person who is convicted of or pleads guilty to murder must be punished by death, by imprisonment for life, **or by a mandatory minimum term of imprisonment for thirty years**. . ." S.C. Code 16-3-20 (1976) (emphasis added).[1]

Therefore in 2006, Judge Cole had an discretion and option of sentencing the Petitioner a mandatory minimum term of thirty years or a life sentence. As noted above, in mitigation, Petitioner's counsel requested the court to sentence to a the lesser sentence of thirty years. App.p. 729.

**RHINES v. WEBER**

In Rhines v. Weber, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440, the Supreme Court addressed how "mixed" petitions containing both exhausted and unexhausted claims should be handled by district courts. The Court in Rhines noted the interplay between the one-year statute of limitations in the AEDPA, 28 U.S.C. § 2244(d)(1), and the requirement of Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), that courts are to dismiss the entire mixed habeas petition without prejudice in order to effectuate the requirement of "total exhaustion." Rhines, 544 U.S. at 274 -75. In such cases, petitioners who come to federal court with a mixed petition "run the

_____

[1]In 2010, the General Assembly amended this portion of 16-3-20. The section now reads: "(A) A person who is convicted of or pleads guilty to murder must be punished by death, or by a mandatory minimum term of imprisonment for thirty years to life . . ."

risk of forever losing their opportunity for any federal review [of their claims]" if the district court dismisses the case without prejudice close to or after the limitations period has expired." Id. In Rhines, the Court noted that some district courts have adopted a stay and abeyance procedure to deal with this problem: the court stays the petition and holds it in abeyance while the petitioner returns to state court with his unexhausted claims. Id. at 275–76. The Court cautioned, however, that the practice of staying a federal habeas case while a petitioner returns to state court to exhaust his claims should be used sparingly.

Staying a federal habeas action while a petitioner returns to state court to exhaust unexhausted claims causes delay which frustrates the statute's objective of encouraging finality and undermines the statute's goal of "streamlining" federal habeas actions by diminishing the incentive to exhaust all claims in state court before filing a federal habeas petition. Id. at 277. A stay is appropriate, however, when there is good cause for the failure to exhaust, the unexhausted claims are not plainly meritless, and there are no intentionally dilatory litigation tactics by the petitioner. Rhines, 544 U.S. at 277–78. The Court reasoned that in such circumstances the petitioner's interest in obtaining federal review outweighs the twin interests of speedy review and finality. Id.

*Good Cause*

To satisfy the first part of the Rhines test, a petitioner must show that there was good cause for failure to exhaust the claims in state court. Rhines, 544 U.S. at 277 ("stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court."). Rhines does not define good cause. It has been suggested that the requirement is not a particularly demanding one. In Pace v. DiGuglielmo, 544 U.S. 408, 416, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005), the Court addressed whether or not a state

11

post-conviction relief petition denied as untimely would qualify as "properly filed" under the federal

habeas tolling statute, 28 U.S.C. § 2244(d)(2). Id. at 410. Addressing in dicta a situation where a

petitioner is pursuing a state post-conviction matter about which the petitioner has a "reasonable

confusion" as to whether it is timely filed (thus, whether it will be considered "properly filed" under

the AEDPA), the Supreme Court suggested as a possible solution filing a "protective" federal habeas

petition and seeking a <u>Rhines</u> stay. Id. at 416. The Court noted that a "petitioner's reasonable

confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him

to file in federal court." Id. The discussion in <u>Pace</u> does not address circumstances involving a mixed

petition, but does indicate that a "reasonable confusion" about the timeliness of the filing in state

court ordinarily would be "good cause" for failure to exhaust.

*Retroactivity of Miller at Issue As To Cases Final on June 25, 2012*

Here, it is apparent that the recent decision in <u>Miller</u> on June 25, 2012 is the basis for the

belated state court proceedings and his failure to exhaust. The attempt to amend his federal petition

as well as his recently filed state PCR application was done within 1 years of the issuance of <u>Miller</u>.

However, the state PCR statute of limitations provides that an application beyond the one year from

finality will be deemed timely under limited circumstances:

S.C. Code Ann., § 17-27-45, "Filing procedures for post conviction relief applications"

provides in pertinent part:

> (B)     **When a court whose decisions are binding upon the Supreme Court of this State
> or the Supreme Court of this State holds that the Constitution of the United
> States or the Constitution of South Carolina, or both, impose upon state
> criminal proceedings a substantive standard not previously recognized or a
> right not in existence at the time of the state court trial, and if the standard or
> right is intended to be applied retroactively, an application under this chapter
> may be filed not later than one year after the date on which the standard or**

12

**right was determined to exist.**

( C )  If the applicant contends that there is evidence of material facts not previously presented and heard that requires vacation of the conviction or sentence, the application must be filed under this chapter within one year after the date of actual discovery of the facts by the applicant or after the date when the facts could have been ascertained by the exercise of reasonable diligence.

Therefore, the initial question under Miller, for the South Carolina state court will be whether Miller is intended to be retroactively applied to juvenile sentences of life without parole which were "final" [not in the direct appeal pipeline] on June 25, 2012. Since Jeter's conviction and sentence became final on November 26, 2008 when the direct appeal remittitur was issued, Miller would have no applicability to his 2006 sentence if Miller was not retroactive to final convictions.

Respondent not that this issue has not been resolved by the South Carolina state court upon information and belief. To the contrary, pending PCR applications are presently pending the resolution of the Aiken decision.  The retroactivity issue will be presented in the Respondent's brief before the South Carolina Supreme Court among other additional reasons why relief may not be appropriate for similarly situated person to Jeter.

A recent survey of cases addressing Miller's retroactivity reveals that there is a conflict among the courts. Courts have disagreed as to whether Miller v. Alabama, 132 S.Ct. 2455 (2012) applies retroactively. See, In Re Michael MORGAN, _ F.3d _, 2013 Westlaw 2476318 (11th Cir. June 10, 2013) (order for rehearing en banc) (Pryor on denial of rehearing en banc) (Miller not retroactive), citing In Re Morgan. 713 F.3d 1365 (11th Cir. April 12, 2013) (denying motion to file successive petition noting Miller not retroactive);  Craig v. Cain, _ F.3d _,  2013 WestLaw 69128 (5th Cir. Jan. 4, 2013) (not retroactive) (Louisiana habeas case); People v. Carp, 298 Mich, App.

13

472, 828 N.W.2d 682 (Mich. App. 2012) (not retroactive); <u>People v. McDade</u>, 2013 Westlaw 3020686 (Mich.App. June 18,2013) (not retroactive); <u>Falcone v. State</u>, 111So.3d 973 (Fla. App. April 30, 2013) (Miller not retroactive); <u>Chambers v. State</u>, _ N.W.2d _, 2013 Westlaw 2364079 (Minnesota May 31, 2013) (Miller not retroactive).

In a number of cases, it appears that some states have passed statutory changes in light of Miller, or conceded that an automatic sentence of life without parole had violated <u>Miller</u>. See <u>Hye v. State</u>, _So.2d _, 2013 Westlaw 2303518 (Miss. App. 2013)(state concedes issue over dissent); People v. Lucero, _ P.3d _, 2013 Westlaw 1459477 (Colo. App. 2013)(state did not take a position); <u>State v. Lovette</u>, 737 S.E.2d 472 (N.C. App. 2013) ( state concedes applicability of statutory changes and Miller as applying to applicant); <u>State v. Simmons</u>, 99 So.3d 28 (La.2012) (allowing for resentencing on collateral review in light of Miller); <u>State v. Williams</u>, 108 So. 3d 255 (La.App. 4th. Cir. 2013) (same); <u>People v. Morfin</u>, 367 Ill. Dec 282, 981 N.E.2d 1010, 2012 WL 6028634 (Ill.App. Nov. 30, 2012) (Miller retroactive).[2]

A sound argument can be made that <u>Miller</u> is not applicable to Petitioner's 2006 sentence. The United States Constitution prohibits cruel and unusual punishment. U.S. Const. amend. VIII. In <u>Graham v. Florida</u>, the Supreme Court considered whether a life without parole sentence given to a juvenile nonhomicide offender constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. 560 U.S. 48, ——, 130 S.Ct. 2011, 2023–30,

---

[2] In <u>Commonwealth v. Batts</u>, _A.3d. _, 2013 WL 1200252 (Pa. Mar.26, 2013), the Pennsylvania Supreme Court determined that <u>Miller</u> applies to cases that were not final at the time of the Miller decision.

176 L.Ed.2d 825 (2010). As a 16–year–old, Graham was charged with armed burglary and attempted armed robbery after he participated in a failed robbery of a restaurant, in which one of Graham's accomplices hit the manager with a metal bar. Id. at ——, 130 S.Ct. at 2018. No money was taken and the injured manager only required stitches in his head. Id. at ——, 130 S.Ct. at 2018. After violating his initial probationary sentence, Graham was sentenced to life imprisonment, the maximum sentence allowed by law and a higher sentence than either the corrections department or the prosecution had requested. Id. at ——, 130 S.Ct. at 2019–20. Florida abolished its parole system in 2003, leaving Graham with no possibility of release other than executive clemency. Id. at ——, 130 S.Ct. at 2020.

The Court explained in Graham that proportionality is the touchstone of Eighth Amendment jurisprudence. Id. at ——, 130 S.Ct. at 2021. There are two categories of cases addressing the proportionality of criminal sentences.  Id. at ——, 130 S.Ct. at 2021. The first "involves challenges to the length of term-of-years sentences," which requires the Court to "consider[ ] all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive." Id. at ——, 130 S.Ct. at 2021. In the second category of proportionality cases, "the Court implements the proportionality standard by certain categorical restrictions on the death penalty." Id. at ——, 130 S.Ct. at 2021. In the "categorical restriction[ ]" cases, the Court has developed Eighth Amendment standards using bright-line rules. See id. at ——, 130 S.Ct. at 2021–22. Before Graham, every categorical restriction developed by the Court had dealt with the death penalty. See Kennedy v. Louisiana, 554 U.S. 407, 421, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008) (categorically prohibiting the death penalty for "one who raped but did not kill a child, and who did not intend to assist another in killing the child"); Roper v. Simmons, 543 U.S. 551, 567, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005)

15

(categorically prohibiting the death penalty for defendants who committed their crimes before the age of 18); Atkins v. Virginia, 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (categorically prohibiting the death penalty for defendants whose intellectual functioning is in a low range).

The Court noted that Graham was a case of a new kind: "a categorical challenge to a term of years sentence." 560 U.S. at ———, 130 S.Ct. at 2022. The Court reasoned that Graham was different from challenges to the proportionality of term-of-years sentences because the "sentencing practice itself [was] in question." Id. at ———, 130 S.Ct. at 2022. Because Graham's challenge "implicate[d] a particular type of sentence as it applies to an entire class of offenders who have committed a range of crimes," the Court's typical term-of-years proportionality analysis was deemed inapplicable. Id. at ———, 130 S.Ct. at 2022–23. Instead, for the first time, the Court used the categorical analysis in a non-death penalty case.

Under the categorical approach, the Court first looked to whether a national consensus existed on life imprisonment without parole sentences for juvenile nonhomicide offenders. Id. at ———, 130 S.Ct. at 2023–26. After examining actual sentencing practices, the Court concluded that such sentences are rare—"as rare as other sentencing practices found to be cruel and unusual." Id. at ———, 130 S.Ct. at 2025. The Court then considered "the culpability of the offenders at issue in light of their crimes and characteristics, ... the severity of the punishment in question," and whether the challenged sentencing practice served legitimate penological goals. Id. at ———, 130 S.Ct. at 2026. Considering the offenders at issue—juveniles—the Court explained that juveniles have "lessened culpability," a "lack of maturity and an underdeveloped sense of responsibility," and thus are less deserving of the most severe punishments. Id. at ———, 130 S.Ct. at 2026 (citation omitted)

16

(internal quotation marks omitted).

The Court went on to discuss the crimes at issue, nonhomicide crimes, and stated that these crimes "differ from homicide crimes in a moral sense" and are "less deserving of the most serious forms of punishment." Id. at ——, 130 S.Ct. at 2027. The Court next discussed the severity of the punishment, life imprisonment without parole, and held that it is the "second most severe penalty permitted by law" and that it "deprives the convict of the most basic liberties without giving hope of restoration." Id. at ——, 130 S.Ct. at 2027 (citation omitted) (internal quotation marks omitted). This calculus led the Court to conclude that "[l]ife without parole is an especially harsh punishment for a juvenile." Id. at ——, 130 S.Ct. at 2028. The Court also observed that none of the legitimate penological goals—retribution, deterrence, incapacitation, and rehabilitation—provided an adequate justification for the sentencing practice. Id. at ——, 130 S.Ct. at 2028–30.

Based on the lack of a supporting penological theory, the limited culpability of juvenile nonhomicide offenders, and the severity of a life without parole sentence, the Court held that the practice of sentencing juvenile nonhomicide offenders to life imprisonment without the possibility of parole is cruel and unusual punishment under the United States Constitution and thus prohibited by the Eighth Amendment. Id. at ——, 130 S.Ct. at 2030. The Court said: "This clear line is necessary to prevent the possibility that life without parole sentences will be imposed on juvenile nonhomicide offenders who are not sufficiently culpable to merit that punishment." Id. at ——, 130 S.Ct. at 2030. The Court held that states must allow a juvenile nonhomicide offender a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Id. at ——, 130 S.Ct. at 2030. Thus, the Court left room for the possibility that a state could incarcerate a juvenile nonhomicide offender for the remainder of the offender's life but prohibited the state from mandating

such a sentence at the outset.

Graham also expressed concern for juvenile offenders tried in the adult criminal justice system, stating that "[a]n offender's age is relevant to the Eighth Amendment, and criminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed." Id. at ——, 130 S.Ct. at 2031. While the Court was cognizant of the differences between juvenile and adult offenders, it also clearly distinguished nonhomicide offenses from homicide offenses. For example, the Court stated that "[t]he instant case concerns only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense." Id. at ——, 130 S.Ct. at 2023. Further, the Court carefully distinguished the two classes of crimes. The Court stated "defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers." Id. at ——, 130 S.Ct. at 2027. The Court thus drew a line between homicide and nonhomicide offenses, in terms of moral depravity and the injury to the victim and the public. Id. at ——, 130 S.Ct. at 2027.

Respondent submits that the holding in Graham does not apply to juvenile homicide offenders like Petitioner. Graham held that life imprisonment without parole sentences are unconstitutionally cruel and unusual as applied to juvenile nonhomicide offenders only and explained that homicides are treated differently under the Eighth Amendment. See Graham, 560 U.S. at ——, 130 S.Ct. at 2023 ("The instant case concerns only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense."); id. at ——, 130 S.Ct. at 2027 ("The Court has recognized that defendants who do not kill ... are categorically less deserving of the most serious forms of punishments than are murderers."). It is true that Graham represents a new approach by the Supreme Court—for the first time setting a categorical ban on certain types of punishment in a

non-capital case. But the Court's categorical approach resulted in a bright-line rule only for nonhomicide offenders. Because Petitioner' underlying offense was a homicide, the Graham rule does not apply to him.

Consequently, Petitioner' Graham-based claim fails to satisfy the new interpretation of federal or state law exception Section 17-27-45.

While Petitioner's PCR appeal was pending, the United States Supreme Court decided Miller v. Alabama, _U.S. _, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) on June 25, 2012, which held that the Eighth Amendment "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders."   Id. at ——, 132 S.Ct. at 2469.

In Miller, the Supreme Court considered whether the imposition of a mandatory life sentence without the possibility of release for those under the age of 18 at the time of their crimes violated the Eighth Amendment's prohibition against cruel and unusual punishment. _ U.S. at ——, 132 S.Ct. at 2460. The case involved the consolidated appeals of two 14–year–olds convicted of homicide. Id. In both cases, the offenders were tried as adults and sentenced to life imprisonment without parole. Id. at __, 132 S.Ct. at 2461–63. **In both cases (one from Alabama, one from Arkansas), the sentence imposed was mandatory under state law, and the sentencing courts had no discretion to consider the individual characteristics of the offenders or their crimes in imposing the sentences**. Id. at _, 132 S.Ct. at 2461–63.[3] The Court concluded that "the Eighth Amendment forbids

---

[3]This is an immediate difference between Jeter's case and the Miller cases. In Jeter's case, there was an alternate sentence available of thirty years and the trial court was able to consider the Petitioner's and remorse and family as a mitigating issue. In Miller the Supreme Court was careful to clarify that its holding in Miller was not a categorical prohibition on the punishment, but instead a requirement that the judge or jury consider the individual characteristics of the juvenile offender before imposing a life without the possibility of parole sentence.  Id. at ——, 132 S.Ct. at 2471. The Court did "not foreclose a sentencer's ability to [impose a life without

a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." Id. at ——, 132 S.Ct. at 2469.[9] The Supreme Court reached that conclusion by applying two lines of precedent. Id. at ——, 132 S.Ct. at 2463–64, 2469. First, the Court considered previous cases announcing categorical bans on sentencing practices as they apply to juveniles, particularly Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, and Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183. Miller, —— U.S. at ——, 132 S.Ct. at 2464–66. The Court noted that Graham and Roper "establish that children are constitutionally different from adults for purposes of sentencing." Id. at ——, 132 S.Ct. at 2464. For instance, the Court explained that compared to adults, children lack maturity and a sense of responsibility, are more vulnerable to outside influences, and have yet to fully develop their character. Id. at ——, 132 S.Ct. at 2464. The Court observed that children have "diminished culpability and greater prospects for reform." Id. at ——, 132 S.Ct. at 2464. The Court then took the reasoning in Graham one step further and said:

> [N]one of what [ Graham ] said about children—about their distinctive (and transitory) mental traits and environmental vulnerabilities—is crime-specific.... So Graham's reasoning implicates any life-without-parole sentence imposed on a juvenile, even as its categorical bar relates only to nonhomicide offenses.... Graham insists that youth matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole.

Id. at ——, 132 S.Ct. at 2465. Thus, the Court concluded that imposition of life without the possibility of parole sentences on juvenile offenders "cannot proceed as though they were not children." Id. at ——, 132 S.Ct. at 2466.

Second, the Court applied its jurisprudence requiring individualized decision-making in

---

parole sentence on a juvenile] in homicide cases," but instead required "only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics before imposing" a sentence of life imprisonment without the possibility of parole. Id. at ——, 132 S.Ct. at 2469, 2471. As noted within, this was done in Jeter's case. .

capital punishment cases, because the Court reasoned that a life without parole sentence for a juvenile is tantamount to a death sentence. Id. at ——, 132 S.Ct. at 2466–68. The Court expressed concern that "mandatory penalties, by their nature, preclude a sentencer from taking account of an offender's age." Id. at ——, 132 S.Ct. at 2467. Because "[m]andatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features," the Court concluded that a sentencing scheme that mandates a life without the possibility of parole sentence for juvenile homicide offenders is unconstitutional. Id. at _, 132 S.Ct. at 2468–69.

The Supreme Court was careful to clarify that its holding in <u>Miller</u> was not a categorical prohibition on the punishment, but instead a requirement that the judge or jury consider the individual characteristics of the juvenile offender before imposing a life without the possibility of parole sentence.   Id. at _, 132 S.Ct. at 2471. The Court did "not foreclose a sentencer's ability to [impose a life without parole sentence on a juvenile] in homicide cases," but instead required "only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics before imposing" a sentence of life imprisonment without the possibility of parole. Id. at ——, 132 S.Ct. at 2469, 2471 (emphasis added).

## B.    The Miller Claim Is Teague-barred to cases Final on June 25, 2013.

In this case, Petitioner was sentenced to life imprisonment without the possibility of release under a discretionary sentencing scheme which allowed the sentencing judge to consider age and other presented mitigating circumstances about the Petitioner for a possible mandatory minimum thirty year sentence. This scheme differed from the Miller cases where those sentencing scheme, unlike South Carolina,  allowed no discretion or consideration of Petitioner' age or the unique characteristics of his background or his offense.

Assuming Miller even applies to the South Carolina discretionary sentencing scheme in Jeter's case, Respondent submits an issue whether Petitioner is entitled to the benefit of the rule announced in Miller. In <u>Teague v. Lane</u>, 489 U.S. 288, 300–10, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the United States Supreme Court clarified that when a defendant is entitled to the benefit of a new rule. The Court concluded that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." Id. at 305, 109 S.Ct. 1060 (citation omitted) (internal quotation marks omitted). But once a conviction or sentence becomes final, the defendant is not entitled to the retroactive benefit of a new rule, subject to two exceptions. Id. at 307, 109 S.Ct. 1060.

First, "a new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe."    Id. (citation omitted) (internal quotation marks omitted). Second, "a new rule should be applied retroactively if it requires the observance of those procedures that are ... implicit in the concept of ordered liberty." Id. (citation omitted) (internal quotation marks omitted). The second exception is "reserved for watershed rules of criminal procedure." Id. at 311, 109 S.Ct. 1060. The Court rested its general rule of nonretroactivity to cases pending on collateral review on comity and finality considerations. <u>Danforth v. Minnesota</u> (Danforth II ), 552 U.S. 264, 279, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008). Notably in <u>Teague</u>, the Court stated: "Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect." 489 U.S. at 309, 109 S.Ct. 1060.

South Carolina has applied the principles of <u>Teague v. Lane</u> in deciding retroactivity of

22

decisions. See <u>State v. Belcher</u>, 385 S.C. 597, 685 S.E.2d 802 (2009); <u>Gibson v. State</u>, 355 S.C. 429, 586 S.E.2d 119 (2003); <u>Talley v. State</u>, 371 S.C. 535, 640 S.E.2d 878 (2007).

<em>The Miller Rule Is A New Rule</em>

The first question under the Teague doctrine is whether Miller announced a "new rule." A Supreme Court decision "constitutes a new rule within the meaning of Teague if it breaks new ground, imposes a new obligation on the States or the Federal Government, or was not dictated by precedent existing at the time the defendant's conviction became final." Id. at 489 (citation omitted) (internal quotation marks omitted). Under the Teague doctrine, a "new rule" generally does not apply to a defendant on collateral review. Id. at 488. This principle serves to " 'validat[e] reasonable, good-faith interpretations of existing precedents made by state courts even though they are later shown to be contrary to later decisions.' " <u>Butler v. McKellar</u>, 494 U.S. 407, 414, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990).

Respondent submit that <u>Miller</u> announced a new rule and that Petitioner' conviction and sentence were final at the time Miller was decided. Indeed, when Petitioner' conviction became final in 2008, <u>Graham</u> had not been decided yet and Miller was certainly not "dictated by precedent." The Court in Miller stated that it was "breaking no new ground in these cases." —— U.S. at _, 132 S.Ct. at 2472, but the mere fact that a court says that its decision is within the logical compass of an earlier decision, or indeed that it is controlled by a prior decision, is not conclusive for purposes of deciding whether the current decision is a new rule under <u>Teague</u>. Because Miller was not "dictated by precedent" when Petitioner' conviction and sentence became final in 2008, the rule announced in <u>Miller</u> later constitutes a "new rule" under the <u>Teague</u> doctrine. Respondent assertion as noted above is consistent with the analysis of courts in other jurisdictions that have addressed the same issue.

23

*The Miller Rule Is a Procedural Rule, Not a Substantive Rule.*

Having concluded that Miller announced a new rule, the court must next consider whether Petitioner is entitled to the retroactive application of Miller. Since Petitioner is before us on postconviction review, either in the present federal habeas action [or viewing the pending state PCR action and certiorari proceedings in the Supreme Court's original jurisdiction], Jeter must satisfy one of the two narrow exceptions under <u>Teague</u>. Petitioner may assert that he is relying on both exceptions.

The first exception applies to substantive rules that alter the range of conduct or the class of persons that the law punishes. <u>Schriro v. Summerlin</u>, 542 U.S. 348, 351–52, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). In comparison, rules that "regulate only the manner of determining the defendant's culpability are procedural," and therefore not substantive. Id. at 353, 124 S.Ct. 2519 (emphasis omitted).

Several cases have clarified the difference between substantive and procedural rules. On the one hand, a new rule is "substantive" if the rule "narrow[s] the scope of a criminal statute by interpreting its terms," or "place[s] particular conduct or persons covered by the statute beyond the State's power to punish." <u>Schriro</u>, 542 U.S. at 351–52, 124 S.Ct. 2519 (emphasis added) (citations omitted). In <u>Penry v. Lynaugh</u>, the Court explained that the definition of a "substantive" rule for purposes of the first Teague exception was not limited to new rules that placed certain conduct completely beyond the State's power to punish. 492 U.S. 302, 330, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), abrogated on other grounds, <u>Atkins v. Virginia</u>, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Instead, a substantive rule also includes new rules that place a certain class of individuals beyond the State's power to punish by death. Id. In other words, substantive rules "apply retroactively

24

because they 'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal ' or faces a punishment that the law cannot impose upon him" because of his status or offense. <u>Schriro</u>, 542 U.S. at 352, 124 S.Ct. 2519 (emphasis added) (quoting <u>Bousley v. United States</u>, 523 U.S. 614, 620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)).

The Court in <u>Penry</u> explained that in both situations "the Constitution itself deprives the State of the power to impose a certain penalty, and the finality and comity concerns" underlying the retroactivity doctrine "have little force." 492 U.S. at 330, 109 S.Ct. 2934 (emphasis added). More specifically, the Court wrote: "[T]he first exception set forth in <u>Teague</u> should be understood to cover not only rules forbidding criminal punishment of certain primary conduct but also rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." Id. The Court explained that if it "held, as a substantive matter, that the Eighth Amendment prohibits the execution of mentally retarded persons such as Penry regardless of the procedures followed, such a rule would fall under the first exception to the general rule of nonretroactivity and would be applicable to defendants on collateral review." Id. (emphasis added). Courts have uniformly held, consistent with Penry, that the categorical sentencing bans announced in Graham and Roper satisfy the substantive rule exception of the Teague doctrine. See, e.g., <u>In re Moss</u>, 703 F.3d 1301, 1303 (11th Cir.2013) (same); <u>In re Sparks</u>, 657 F.3d 258, 262 (5th Cir.2011) (holding that Graham announced a substantive rule under the Teague doctrine); <u>Little v. Dretke</u>, 407 F.Supp.2d 819, 823 (W.D.Tex.2005) (holding that Roper announced a substantive rule under the Teague doctrine); <u>Bonilla v. State</u>, 791 N.W.2d 697, 700–01 (Iowa 2010) (same); see also 7 Wayne R. LaFave et al., Criminal Procedure § 28.6(e) (3d ed. Supp.2012).

On the other hand, rules that "regulate only the manner of determining the defendant's

culpability are procedural." Schriro, 542 U.S. at 353, 124 S.Ct. 2519. "They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." Id. at 352, 124 S.Ct. 2519. The definition of a procedural rule for purposes of the first Teague exception extends to rules that regulate the manner of determining a defendant's sentence. Lambrix v. Singletary, 520 U.S. 518, 539, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997). In Lambrix, the Court considered whether the rule announced in Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), constituted a substantive or procedural rule under the Teague doctrine. 520 U.S. at 526–27, 117 S.Ct. 1517. Under the Espinosa rule, an actor with capital sentencing authority must not be permitted to weigh invalid aggravating circumstances. 505 U.S. at 1082, 112 S.Ct. 2926. The Court in Lambrix held that the Espinosa rule was procedural, not substantive, because it "neither decriminalized a class of conduct nor prohibited the imposition of capital punishment on a particular class of persons." 520 U.S. at 539, 117 S.Ct. 1517 (quoting Saffle v. Parks, 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)); see also Sawyer v. Smith, 497 U.S. 227, 241, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990) (holding that the rule announced in Caldwell v. Mississippi, 472 U.S. 320, 341, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), which requires that a jury with capital sentencing authority must be made aware of the gravity of its task, was procedural).

In summary, a new rule regarding sentencing is substantive if it eliminates the power of the State to impose the punishment in question regardless of the procedures followed. Penry, 492 U.S. at 330, 109 S.Ct. 2934. On the other hand, the new rule is procedural if it regulates the manner in which the State exercises its continuing power to impose the punishment in question. Lambrix, 520 U.S. at 539, 117 S.Ct. 1517. Keeping the difference between substantive and procedural rules in

26

mind, we consider Petitioner' arguments regarding the Teague exceptions.

Petitioner' primary argument may be that the <u>Miller</u> rule satisfies the first Teague exception: that it is a substantive rule and therefore entitled to retroactive application. More specifically, Petitioner may argue that the Miller rule is substantive because (1) it prohibits the imposition of a mandatory sentence of life in prison without the possibility of parole "on a particular class of persons" - namely juvenile homicide offenders, and (2) it announced a new "element" by requiring consideration of potentially mitigating circumstances regarding the offender's youth and attendant characteristics.

Respondent submits that the rule announced in <u>Miller v. Alabama</u> is procedural, not substantive. We reach that conclusion for several reasons. First, the rule announced in <u>Miller</u> does not eliminate the power of the State to impose the punishment of life imprisonment without the possibility of release upon a juvenile offender who has committed a homicide offense.  Instead, <u>Miller</u> invalidated a sentencing scheme that mandated the punishment of life without the possibility of release without consideration of the unique characteristics of a juvenile offender. In particular, Miller requires "that a sentencer follow a certain process—considering an offender's youth and attendant characteristics - before imposing" a sentence of life imprisonment without the possibility of parole. _U.S. at _, 132 S.Ct. at 2471 (emphasis added). Similar to <u>Schriro,</u> the Court in <u>Miller</u> altered the permissible methods by which the State can exercise its continuing power to punish juvenile homicide offenders by life imprisonment without the possibility of parole.

Second, relevant federal decisions have concluded Miller is procedural, and therefore not retroactive. See, e.g., <u>Craig v. Cain</u>, No. 12–30035, 2013 WL 69128, at *1–2 (5th Cir. Jan. 4, 2013). In <u>Craig</u>, the Fifth Circuit explained:

27

> [T]he Supreme Court has denied retroactive application of prohibitions against weighing invalid aggravating circumstances in certain circumstances, imposition of a death sentence by a jury that has been led to believe responsibility for determining the appropriateness of a death sentence rests elsewhere, and capital-sentencing schemes that foreclose a jury from considering all mitigating evidence.

Craig, 2013 WL 69128 *2 (citing Beard v. Banks, 542 U.S. 406, 417, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004); Lambrix, 520 U.S. at 539, 117 S.Ct. 1517; Sawyer, 497 U.S. at 241, 110 S.Ct. 2822; and Saffle, 494 U.S. at 495, 110 S.Ct. 1257). The Fifth Circuit held that " Miller does not satisfy the [first Teague exception] because it does not categorically bar all sentences of life imprisonment for juveniles; Miller bars only those sentences made mandatory by a sentencing scheme." Id. Like the Fifth Circuit, Respondent submits that the Miller rule is similar to the rules at issue in Lambrix and Sawyer because the Miller rule does not deprive the State of the power to punish a juvenile homicide offender with life imprisonment without the possibility of parole, but instead only prohibits a specific sentencing method, procedure, or scheme - namely, mandatory sentencing statutes.

Third, despite Petitioner' potential assertion to the contrary, the Miller rule does not announce a new "element." Unlike the Arizona statute at issue in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the Miller rule does not mandate that a certain aggravating factor be proven before the State imposes the sentence in question. In Ring, the statute at issue provided that a "death sentence may not legally be imposed ... unless at least one aggravating factor is found to exist beyond a reasonable doubt." 536 U.S. at 597, 122 S.Ct. 2428 (citation omitted) (internal quotation marks omitted). The Ring Court held that "[b]ecause Arizona's enumerated aggravating factors operate as the 'functional equivalent of an element of a greater offense,' the Sixth Amendment requires that they be found by a jury." Id. at 609, 122 S.Ct. 2428 (citations omitted).

In Schriro, the Court rejected the defendant's argument that the rule announced in Ring was

substantive under the first Teague exception because it "modified the elements of the offense for which he was convicted." 542 U.S. at 354, 124 S.Ct. 2519. The Court explained that "because Arizona has made a certain fact essential to the death penalty, that fact must be found by a jury, [but that] is not the same as this Court's making a certain fact essential to the death penalty. The former was a procedural holding; the latter would be substantive." Id. By requiring a sentencer to consider the potentially mitigating circumstances of an offender's youth and attendant characteristics, the Miller rule does not create a requirement that is the "functional equivalent of an element." See Ring, 536 U.S. at 609, 122 S.Ct. 2428 (citations omitted) (internal quotation marks omitted). This is especially true when the Miller rule does not require the sentencer to make any specific finding of fact and when the Supreme Court has recognized the distinction "between facts in aggravation of punishment and facts in mitigation." Apprendi v. New Jersey, 530 U.S. 466, 490 n. 16, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Miller does not announce a new element because it does not require the State to prove any specific fact before the sentencer imposes the punishment of life imprisonment without the possibility of release on a juvenile homicide offender.

In summary, Respondent submits that the rule announced in Miller is procedural, not substantive, for three reasons. First, the Miller rule does not eliminate the power of the State to impose the punishment of life imprisonment without the possibility of release upon a juvenile offender who has committed a homicide offense. Second, our analysis is consistent with relevant federal decisions. Third, the Miller rule did not announce a new element.

*The Miller Rule Is Not a Watershed Rule*

Having concluded that the Miller rule is procedural, we next consider Petitioner' alternative argument that, even if we conclude that the Miller rule is procedural, he is still entitled to retroactive

application of the rule because it is a watershed rule and therefore satisfies the second <u>Teague</u> exception. In order to qualify as a watershed rule, a "new rule must both be 'necessary to prevent an impermissibly large risk of an inaccurate conviction' and 'alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.' " <u>Whorton v. Bockting</u>, 549 U.S. 406, 418, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007)).The Supreme Court has repeatedly emphasized that the watershed 'exception is extremely narrow,' and since its decision in Teague has "rejected every claim that a new rule satisfied the requirements for watershed status." <u>Whorton</u>, 549 U.S. at 417–18, 127 S.Ct. 1173). In fact, the Court has indicated that "it is unlikely that any" watershed rules have " 'yet to emerge.' " <u>Schriro</u>, 542 U.S. at 352, 124 S.Ct. 2519 (quoting <u>Tyler v. Cain</u>, 533 U.S. 656, 667 n. 7, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001)). "To come within the watershed exception, the rule must institute procedures implicit in the concept of ordered liberty, ... and it is not enough that a new rule is aimed at improving the accuracy of trial, or even that it promotes [t]he objectives of fairness and accuracy."   The only case that has ever satisfied this high threshold is <u>Gideon v. Wainwright</u>, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), in which the Court " 'held that counsel must be appointed for any indigent defendant charged with a felony.' " <u>Whorton</u>, 549 U.S. at 419, 127 S.Ct. 1173).[29]

Respondent submits that Miller is not a watershed rule for two reasons. First, Miller deals exclusively with sentencing and does not "impact the accuracy of an underlying determination of guilt or innocence."  Moreover, Miller 's holding, "unlike the expansive rule in Gideon establishing a right to counsel in all felony cases, affects only a small subset of defendants, indicating that the rule does not have a fundamental and profound impact on criminal proceedings generally."  Second, the Miller Court's review of its precedents demonstrates that its holding was not a "watershed"

30

development. The Court's cases have long established that "sentencing juries must be able to give meaningful consideration and effect to all mitigating evidence that might provide a basis for refusing to impose the death penalty on a particular individual." Abdul–Kabir v. Quarterman, 550 U.S. 233, 246, 127 S.Ct. 1654, 167 L.Ed.2d 585 (2007) (citing Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)) (holding that the imposition of mandatory death sentence without consideration of the character and record of the individual offender or the circumstances of the particular offense was inconsistent with the fundamental respect for humanity that underlies the Eighth Amendment); Penry, 492 U.S. at 328, 109 S.Ct. 2934 ("In order to ensure 'reliability in the determination that death is the appropriate punishment in a specific case,' ... the jury must be able to consider and give effect to any mitigating evidence relevant to a defendant's background and character or the circumstances of the crime." (citation omitted); Eddings v. Oklahoma, 455 U.S. 104, 112, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("[T]he sentencer in capital cases must be permitted to consider any relevant mitigating factor."); Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion) ("[T]he Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.")). Miller 's extension of this well-established principle to non-capital sentencing does not rise to the level of a rule like Gideon that " 'alter[s] our understanding of the bedrock procedural elements essential to the fairness of a proceeding.' " Whorton, 549 U.S. at 420, 127 S.Ct. 1173 (emphasis added) (quoting Tyler, 533 U.S. at 665, 121 S.Ct. 2478).

Therefore , the rule announced in Miller v. Alabama, _U.S. _, 132 S.Ct. 2455, 183 L.Ed.2d

407 (2012), is a new rule of criminal constitutional procedure that is neither substantive nor a watershed rule that alters our understanding of the bedrock procedural elements essential to the fairness of a proceeding. Therefore, Petitioner is not entitled to the retroactive benefit of the Miller rule in a postconviction proceeding. [4]

For these reasons, a motion to stay and abey could be properly denied.

### C.    Since Jeter's Conviction for Murder Allowed Consideration of a Thirty Year Sentence and The Petitioner's Age and Other Factors Were Considered, Miller Is Not Applicable To Petitioner's Case And Would Be An Expansion of Miller.

Respondent further submits that the expressed holding of Miller has no applicability to Jeter's life sentence in 2006 because it was not a mandatory life sentence without parole scheme held unconstitutional in Miller. In Jeter's case, although he received a sentence of life imprisonment without parole, the sentencing judge - unlike the Miller cases - had the discretion to sentence to thirty years and was able to consider the Applicant's age and other factors presented, including his rile in the crime, his fatherhood, his cooperation, his willingness to plead to a lesser offense and his remorse prior to determining the proper sentence. This was consistent with the procedures discussed in Miller. App.p. 728-730.

In Miller, both cases (one from Alabama, one from Arkansas) before the court involved LWOP sentence imposed which were mandatory under state law, and the sentencing courts had no discretion to consider the individual characteristics of the offenders or their crimes in imposing the sentences. Id. at_, 132 S.Ct. at 2461–63. The Court concluded that "the Eighth Amendment forbids

---

[4]Respondent submits that the federal constitutional grounds for relief are in effect procedurally "plainly meritless" because they are subject to dismissal as a successive post-conviction petition and should be barred by the applicable PCR state limitations period since Miller is not a new rule applicable and retroactive under S.C. Code Section 17-27-45 (B).

a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." Id. at ——, 132 S.Ct. at 2469. The Supreme Court was careful to clarify that its holding in Miller was not a categorical prohibition on the punishment, but instead a requirement that the judge or jury consider the individual characteristics of the juvenile offender before imposing a life without the possibility of parole sentence. Id. at _, 132 S.Ct. at 2471. The Court did "not foreclose a sentencer's ability to [impose a life without parole sentence on a juvenile] in homicide cases," but instead required "only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics - before imposing" a sentence of life imprisonment without the possibility of parole. Id. at _, 132 S.Ct. at 2469, 2471.

In Jeter's situation, Judge Cole considered the youth of Jeter and the other circumstances in deciding to reject the term of years and sentence to life without parole.

Clearly then, the Petitioner must be seeking an expansion of Miller to preclude any LWOP sentence upon an offender who was under 18 at the time of the crime. This expansion is similarly barred in a federal habeas setting under Teague and Section 2254 (d)(1). His claim for relief should be foreclosed in this Court.

Respondent submits that while it may appear initially that he has "good cause," a closer inspection of his pending state court claims as noted within are not supportive of Miller and are seeking an expansion to apply to his case. He may have failed to show good cause under Rhines.

**Plainly Meritless**

The second part of the Rhines test is that the claim or claims must not be meritless. Rhines, 544 U.S. at 277 (2005) ("even if a petitioner had good cause for [failing to present his claims first to the state courts], the district court would abuse its discretion if it were to grant him a stay when

33

his unexhausted claims are plainly meritless."). Respondents do not contest that the grounds for relief are substantively not "plainly meritless." However, they argue that the grounds for relief are in effect procedurally "plainly meritless" because they are subject to dismissal as a successive post-conviction petition and should be barred by the applicable PCR state limitations period since Miller is not a new rule applicable under Section 17-27-45.

Here, there was no mandatory life without parole sentence under Jeter's conviction for murder. Instead, the sentencing judge was able to consider his youth and other circumstances prior to his discretionary decision on whether to sentence to thirty years or life. In fact, the Petitioner's counsel also requested the minimum sentence. Therefore, his claims fail to present a federal constitutional ground. Therefore, they are plainly meritless.

### No Intentionally Dilatory Tactics

The Petitioner's PCR was denied on July 28, 2010 and the cert petition was denied on January 2, 2013 when the remittitur was issued. Miller was decided on June 25, 2012. The Miller claims appear to have been initially raised by Petitioner in his initial motion to stay - which was filed before the PCR application was filed on May 30, 2013. Based on the record presented, it does not appear that Petitioner or counsel has engaged in any intentionally dilatory litigation tactics.

### III.

Respondent is mindful of the warnings in Rhines that stays should be available only in limited circumstances and if employed too frequently, have the potential to undermine the AEDPA purposes of finality and speedy resolution of federal claims. At first blush, it would have appeared that a stay would be necessary under Rhines, in light of the mere fact that the Petitioner, a 16 year old at the time of his crime had received a sentence of life without parole for murder in 2006.

However, upon closer review, the Petitioner was not sentenced under a mandatory sentencing scheme, but had the possibility of a lesser sentence of thirty years that the sentencing judge rejected after he considered the Petitioner's age, remorse, cooperation with police and other factors including his remorse. In addition, the federal claims are barred under Teague.    This case does not have unique facts and circumstances justifying a Rhines stay. In fact,  Jeter's sentencing option may be the factor why he was not a named party in the certiorari proceeding pending before the Supreme Court. See Rose v. Lundy, 455 U.S. at 519 (noting under comity principles the important interest in a state court's complete factual record and citing 28 U.S.C. § 2244(d) (presumption of correctness of factual findings made by a state court)) See also Id. at 522 (total exhaustion requirement was not intended to "unreasonably impair the prisoner's right to relief").

Therefore, for the reasons set out herein, this Court may wish to deny the requests to stay and abey pending the state court proceedings where his claims may be barred under state law and the mandates of Miller are not applicable to his unique factual situation.

WHEREFORE, having made Return, the Respondents request that the motion be denied and the petition be dismissed for the reasons set forth above.

Respectfully submitted,

ALAN WILSON
Attorney General

JOHN W. McINTOSH
Deputy Attorney General

DONALD J. ZELENKA
Senior Assistant Deputy Attorney General
ID No. 4425

Post Office Box 11549
Columbia, South Carolina 29211

35

(803) 734-6305

**ATTORNEYS FOR RESPONDENTS**


S/Donald J. Zelenka

By: _____

June 24, 2013                    DONALD J. ZELENKA