**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Joshua Jeter, | ) | Case No. 2:13-cv-00460-BHH-MGB |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden Perry Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Joshua Jeter, a state prisoner, seeks habeas corpus under 28 U.S.C. § 2254. (Dkt. Nos. 1, 6-1, 199.) This matter is now before the Court upon Respondent's Motion for Summary Judgment. (Dkt. No. 208.) Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2) (D.S.C.), the assigned United States Magistrate Judge is authorized to review the Petition and submit findings and recommendations to the United States District Judge. For the reasons set forth below, the undersigned **RECOMMENDS** that Respondent's Motion for Summary Judgment (Dkt. No. 208) should be **GRANTED**.

## FACTUAL SUMMARY

In February of 2005, the Spartanburg County Court of General Sessions indicted Petitioner for murder. (Dkt. No. 23-3 at 10–12.)[1] He was subsequently indicted for burglary in the first degree, attempted armed robbery, and possession of a pistol by a person under the age of twenty-one. (*Id.* at 1–10.) Petitioner was tried—alongside his co-defendant, Lance Lyles—before the Honorable J. Derham Cole in March of 2006. (*See generally* Dkt. Nos. 14-10, 14-11, 14-12, 14-13.)

---

[1] This Report and Recommendation reflects the pagination assigned by the Court's automated docketing system.

Petitioner was represented by J. Patricia Anderson as his trial counsel. (Dkt. No. 14-10 at 3.) His co-defendant was represented by Richard W. Vieth. (*Id*.)

At trial, the State presented evidence that a twenty-one-year-old man by the name of Travaris Howze was shot and killed on December 8, 2004. (*See generally* Dkt. Nos. 14-10, 14-11, 14-12, 14-13.) Howze was visiting a neighbor, Clarence Spicer, at his apartment when the defendants arrived at the door. (*See generally* Dkt. Nos. 14-10, 14-11, 14-12, 14-13.) After opening the door, Spicer observed a man with a hood over his head, who stated "what's up." (*See generally* Dkt. Nos. 14-10, 14-11, 14-12, 14-13.) Spicer then observed a second man, wearing a mask and standing behind the man with the hood. (*See generally* Dkt. Nos. 14-10, 14-11, 14-12, 14-13.) When Spicer attempted to close the door, one of the men fired a gunshot into the apartment. The gunshot struck Howze in the head, killing him. (*See generally* Dkt. Nos. 14-10, 14-11, 14-12, 14-13.)

The State's theory of the case was essentially that the defendants were acting in concert attempting to burglarize and rob Spicer while brandishing weapons. (*See generally* Dkt. Nos. 14-10, 14-11, 14-12, 14-13.) However, their plan was interrupted by Spicer fighting back, and Howze died as a result. (*See generally* Dkt. Nos. 14-10, 14-11, 14-12, 14-13.)

Relevant to Petitioner, the State presented various witness statements indicating that Petitioner was guilty of the crimes for which he was indicted. (*See generally* Dkt. Nos. 14-10, 14-11, 14-12, 14-13.) For example, the State presented testimony from Clarence Spicer, who stated that Howze was a neighbor and friend who had an apartment below him. (Dkt. No. 14-10 at 109.) Spicer testified that after work on December 8, he went to Howze's apartment where Howze and another man, Brian Durbin, were playing a game. (*Id*. at 115.) After they finished, the three of them went upstairs to Spicer's apartment. (*Id*. at 116.). Durbin then left to get

2

something to eat. (*Id*.) While he was gone, two men came to the door, one of them with a mask and a gun and the other with a hood covering his face. (*Id*.) One of the men tried to step in, but Spicer stopped him. (*Id*.) The other man came from the side with a gun and mask on, and Spicer started trying to close the door. (*Id*.) While he was closing the door, one of the men shot inside of his apartment, killing Howze. (*Id*.)

Spicer said he recognized the first person with the hood on, although he did not recall him immediately at the incident. (*Id*. at 117–120.) He said the person had gold teeth and said "what's up" and "something else" when he attempted to enter the apartment. (*Id*.) Spicer explained that he did not know why the person was there and then the other man came around from the right side with a ski mask and a gun. (*Id*.) Spicer described both parties as pushing on the door. (*Id*.) Spicer stated that he thought they were trying to rob him because they came to his house with a gun and mask. (*Id*.) Spicer further testified that he later recalled a day when he was playing PlayStation with his friend, and Petitioner's co-defendant, Lance Lyles, came over to join them, as did his brother. (*Id*. at 127.) Spicer subsequently identified Lyles as the person at the door in a photographic line-up. (*Id*. at 129.)

The State also presented testimony from Scott Hill, a student at Dorman High School, who described walking near Spicer's apartment on the evening Howze was killed. (*Id*. at 162–67; Dkt. No. 14-11 at 1–4.) Hill testified that he heard gunshots and then two people ran by him, each with guns and masks. (Dkt. No. 14-10 at 162–67; Dkt. No. 14-11 at 1–4.)

Officer William Swanlund testified, as well. He described arriving at Spicer's apartment building on the night of the incident and being flagged down by a "very upset and hysterical" Spicer, who stated that his friend had been shot. (Dkt. No. 14-11 at 30.) He said Spicer told him that Spicer had heard a knock on the door, opened it, saw two men standing outside his door, one

3

of them said "what's up," and then one of them pulled a silver handgun when Spicer tried to shut the door on one of the man's arms. (*Id*. at 31.) Officer Swanlund described going into the apartment and seeing a black male face down in the living room. (*Id*. at 32.)

Sergeant Chris Taylor of the Spartanburg Public Safety Department testified that he spoke with Spicer after the incident to see if he recalled any further information. Officer Taylor corroborated Spicer's recollection about seeing Lyles previously at his apartment. (*Id*. at 158–64.) Officer Taylor then spoke with Lyles about his whereabouts on December 8. (*Id*.) Lyles described catching a ride home with Josh Jeter around 8 p.m. (*Id*.)

Officer Taylor testified that he asked Petitioner to speak with him, and Petitioner agreed. (*Id*. at 165.) Officer Taylor explained that Petitioner's story kept changing, but that he eventually stated that he was with Lyles on the evening in question. (*Id*. at 166.) The State presented evidence that Petitioner gave other statements, in which he continually denied going to Spicer's apartment complex. (Dkt. No. 14-12 at 26–27, 42–44.) However, the State presented evidence that Petitioner gave another statement on December 14, 2004, in which he explained that he went to Spicer's apartment complex and:

> was over there, . . . by the balcony thing. And dude came to the door. So I walked by the door and I had a mask on all the way . . . And the dude saw me. The dude tried to close the door. I had run back to Charleston Place and I had got in the car. This was between 8:30 and 9:00 o'clock. I did have on a mask all the way. I don't think nothing should happen to me. But if you do the crime, you do the time.

(*Id*. at 48.) The State also presented evidence that Petitioner gave a statement nine months later, in which he stated, in relevant part:

> . . . . I went back into my brother's house. It was like 30 minutes later. I walked outside into Charleston Place. It was cold outside. So I wore a mask and I walked to [Spicer's apartment complex]. When I got to [Spicer's apartment complex], I walked up and the guy then like wus up, and I said wus up. When I pulled my gun out the guy tried to close the door. I didn't see anyone else in the house. So after that I ran back to Charleston Place. On the way it was a guy walking on the

pathway that saw me running. The gun I had I bought it at the park from a guy named Kevin, Calvin . . . . The night [of December 8, 2004] it didn't have any bullets.

(*Id*. at 51.)

Petitioner's defense focused on attempting to show that Petitioner and Lyles visited Spicer's apartment to buy drugs. (Dkt. No. 14-12 at 62–156.) In support of this defense, Petitioner proffered the testimony of Robert Ledford, a former neighbor of Spicer. (*Id*. at 62–77.) Petitioner also testified in his own defense. (*Id*. at 85–142.) Petitioner testified that: he had a gun with him on the night of December 8, 2004; Lyles suggested they "go get some weed" from his friend; they walked over to the friend's apartment; Petitioner wore a mask on his face "to keep his nose warm"; Lyles wore the hood of his jacket up on his head; Lyles did not tell him anything about where they were going; when they arrived at the friend's apartment, Petitioner walked over by the balcony and Lyles knocked on the door; when the "guy" answered the door, Petitioner turned around and walked to the door to see what was going on because Lyles was not entering the apartment, as he usually would when buying marijuana; Petitioner said "what's up" to the guy at the door; Petitioner then turned to look at Lyles, who "was making a weird face" and had his right hand in his right back pocket with his hand on his gun; Lyles began to pull his gun out; Petitioner pulled his gun out after seeing Lyles do the same; Petitioner tried to ask Lyles what was going on and, at the same time, the "guy" tried to close the door; Lyles then pushed up against the door with his foot; when Lyles pushed up against the door, Petitioner started walking towards the stairs before suddenly hearing two gunshots; he then ran down the stairs and Lyles came running behind him; Petitioner and Lyles ran away, both with their guns out; Petitioner remembered seeing a "guy on the path" while he was running away; his gun had no bullets in it, so nothing would have happened if he fired it; he did not know anyone had been shot when he

started running away; he did not plan to rob anyone, steal anything, or kill anyone; Lyles told him after the incident on December 8 "that the guy owed him some weed . . . [but] wouldn't give him his weed." (*Id*.)

Lyles (Petitioner's co-defendant) testified in support of his own defense, as well. (Dkt. No. 14-13 at 45–111.) Lyles testified that: when they arrived at the apartment, he told Petitioner to wait on the side while he bought the marijuana; Lyles knocked on the door and Spicer opened it; Lyles said "what's up" and asked if Spicer had "any weed today"; Spicer said he did not and it would take him about thirty minutes to get some, and "then that's when the commotion and everything just rushed in"; Petitioner "pounded [Lyles] in" and "overpowered" him; Lyles heard a firearm discharge; Lyles "got scared and ran"; Lyles was not trying to force his way into Spicer's apartment; Lyles did not have a weapon with him on the night of December 8, 2004. (*Id*.) Lyles denied "ever [being] shortchanged or in any way badly treated by [Spicer]" and denied having "any grudge" against him. (*Id*. at 59.) Lyles further testified that he did not see Petitioner "fire a shot" and that he did not see anyone inside Spicer's apartment. (*Id*. at 78, 80.)

Ultimately, the jury found Petitioner and his co-defendant guilty on all counts. (Dkt. No. 14-14 at 60–61.) Petitioner was sentenced to five years' imprisonment for unlawful possession of a pistol by a person under the age of twenty-one, ten years' imprisonment for attempted burglary in the first degree, and twenty years' imprisonment for attempted armed robbery. (*Id*. at 68–69.) Petitioner was sentenced to life in prison for murder. (*Id*. at 69.)

## PROCEDURAL HISTORY

Following his conviction and sentencing, Petitioner filed a timely notice of appeal before the South Carolina Court of Appeals, which was denied on October 15, 2008.[2] (*Id.* at 133–35.) The remittitur was issued and filed on November 26, 2008. (Dkt. No. 14-4.)

On March 4, 2009, Petitioner filed an application for post-conviction relief ("PCR"), alleging that he was being held in custody unlawfully on the following grounds: (1) ineffective assistance of trial counsel based on counsel's failure to "ask for severance trial," and (2) a purported violation of Rule 403 of the South Carolina Rules of Evidence pertaining to the trial judge's "exclusion of corroborating evidence that the victims were involved in selling marijuana." (14-14 at 136–44.) An evidentiary hearing was held before the Honorable J. Mark Hayes, II, on May 26, 2010. (Dkt. No. 14-15 at 1–47.) At the hearing, Petitioner was represented by Vanessa Cason as his PCR counsel. (*Id.*) Petitioner, Pastor Cathaye Jones, and his trial counsel, J. Patricia Anderson, testified at the hearing. (*Id.*) Judge Hayes dismissed Petitioner's application in a written order dated July 28, 2010. (*Id.* at 48–56.)

Petitioner appealed. His appellate counsel, Robert M. Pachak, filed a Petition for Writ of Certiorari pursuant to *Johnson v. State*, 294 S.C. 310 (1988) before the South Carolina Supreme Court, along with a petition to be relieved as counsel. (Dkt. No. 14-5.). (Dkt. No. 14-5.) The Petition raised the sole ground of whether Petitioner's trial counsel was ineffective for failing to request that the trial be severed. (*Id.*) On February 16, 2011, Petitioner filed a "Pro Se Petition for Writ of Certiorari." (Dkt. No. 14-7.) The Petition was transferred to the South Carolina Court of Appeals pursuant to Rule 243 of the South Carolina Appellate Court Rules and denied on

---

[2] Petitioner also filed a motion to alter or amend his sentence, which was denied on April 11, 2006. (Dkt. No. 14-16.)

December 13, 2012. (Dkt. No. 14-8.) The remittitur was issued on January 2, 2013. (Dkt. No. 10-21.)

Petitioner then filed a Petition for Writ of Habeas Corpus in this Court on February 20, 2013. (Dkt. No. 1.) In his initial petition, he raised the following grounds for relief (verbatim):

| | |
|---|---|
| <u>Ground One</u>: | Ineffective assistance of counsel |
| <u>Supporting Facts</u>: | Failure to advise of the desirability of accepting or rejecting a plea bargain. |
| <u>Ground Two</u>: | Ineffective assistance of counsel |
| <u>Supporting Facts</u>: | Failure to ask for severance trial. |
| <u>Ground Three</u>: | Ineffective assistance of counsel |
| <u>Supporting Facts</u>: | Failure to argue changed appearance. |
| <u>Ground Four</u>: | Indictment & information |
| <u>Supporting Facts</u>: | I did not receive any indictment, warrants, or information for the charges of 1st degree burglary, attempted armed robbery & poss of weapon. |

(Dkt. Nos. 1, 6-1.) On April 22, 2013, Petitioner filed a Motion to Stay, explaining that he was "currently in a class action appeal in the South Carolina Supreme Court and also [] was just appointed a pro bono lawyer and [] informed that he filed a [PCR] application . . . ." (Dkt. No. 10.) On May 29, 2013, Respondent filed a Return and Motion for Summary Judgment addressing the initial habeas petition. (Dkt. Nos. 14, 15.) On June 6, 2013, Petitioner filed a Motion to Amend, along with a second Motion to Stay. (Dkt. Nos. 18, 19.) In his Motion to Amend, Petitioner sought to add the following grounds for relief to his petition:

| | |
|---|---|
| <u>Ground Five</u>: | Petitioner's sentence of life without parole, imposed for a crime he committed when he was a juvenile, violates the Eighth Amendment to the United States Constitution. |

<blockquote>
<u>Ground Six</u>:        Petitioner's sentence of life without parole violates the Eighth Amendment to the United States Constitution because the proceedings which led to its imposition were both procedurally and substantively inadequate.
</blockquote>

(Dkt. No. 18.) Petitioner's second Motion to Stay reiterated the arguments set forth in his first Motion to Stay and noted that he was "currently a class member in an original habeas action pending before the South Carolina Supreme Court in which certiorari [was granted]." (Dkt. No. 19.) Petitioner requested a stay pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005).

On September 24, 2013, this Court mooted Petitioner's first Motion to Stay, granted his Motion to Amend, and granted his second Motion to Stay, explaining:

> [O]n or about May 25, 2013, Petitioner filed a second post-conviction relief action in the Spartanburg County Court of Common Pleas. (Dkt. No. 23-1.) Of the four claims raised in that second PCR action, two are identical to the claims Petitioner seeks to add to his federal habeas petition. (<u>See</u> Dkt. No. 18; Dkt. No. 23-1.) That PCR action, <u>Joshua Jeter v. State of South Carolina</u>, Civ. A. No. 2013-CP-42-2353, remains pending in the Spartanburg County Court of Common Pleas. Furthermore, as Petitioner notes, the case of <u>Aiken et al. v. Byars et al.</u>, Appellate Case No. 2012-213286, is currently pending before the South Carolina Supreme Court. (<u>See</u> Dkt. No. 23-9.) It is not clear to the undersigned exactly which issues the South Carolina Supreme Court will address in its order; it is clear, however, that the case concerns, as Respondent notes, "juvenile sentencing to life without parole." (Dkt. No. 23 at 2.) A ruling in the <u>Aiken</u> case could easily have import in Petitioner's current actions.
>
> As noted above, Petitioner seeks to amend his habeas petition. The undersigned concludes that such motion should be granted, and, as such, Petitioner's Motion to Amend (Dkt. No. 18) is hereby GRANTED.
>
> Petitioner also seeks to stay the instant habeas proceeding. In his first Motion to Stay, Petitioner asked the Court to stay the instant matter because Petitioner is "currently in a class action appeal in the South Carolina Supreme Court" and because he "was just appointed a pro bono lawyer and . . . was informed that [the attorney] filed a post-conviction relief (PCR) application in the court of common pleas." (Dkt. No. 10.) In his second Motion to Stay, Petitioner seeks a stay pursuant to <u>Rhines v. Weber</u>, 544 U.S. 269 (2005). Petitioner states that an application for post-conviction relief "raising claims that are contained in [his] federal habeas petition was recently filed on [his] behalf in the Spartanburg County Court of Common Pleas." (Dkt. No. 19.) He states that he is "also

currently a class member in an original habeas action pending before the South Carolina Supreme Court in which certiorari has recently been granted." (Id.)

The Respondent opposes the stay and contends that it is inappropriate in this action. The undersigned disagrees.

With the amendment allowed, Petitioner has a mixed petition of exhausted and unexhausted claims. In Rhines v. Weber, the Supreme Court addressed how "mixed" habeas petitions should be handled by district courts. In Rhines, the Court noted the "interplay" between the one-year statute of limitations in the AEDPA, 28 U.S.C. § 2244(d)(1), and the holding in Rose v. Lundy, 455 U.S. 509 (1982), which requires courts to dismiss "mixed" habeas petitions without prejudice in order to effectuate the requirement of "total exhaustion." Rhines, 544 U.S. at 274-75. In such cases, petitioners who come to federal court with a "mixed" petition "run the risk of forever losing their opportunity for any federal review [of their claims]" if the district court dismisses the case without prejudice close to or after the limitations period has expired. Id.

In Rhines, the Court noted that some district courts have adopted a "stay and abeyance" procedure to deal with this problem. The court can stay the petition and hold it in abeyance while the Petitioner returns to state court with his unexhausted claims. Id. at 275-76. The Court recognized, however, that this procedure frustrated the AEDPA's purposes of encouraging finality of state court judgments and streamlining federal habeas proceedings by encouraging petitioners to exhaust all their claims in state court before filing a federal petition. Id. at 276-77. For these reasons, the Court in Rhines held that stay and abeyance should be available only in limited circumstances and only within reasonable time limits established by the district court. Id. at 277. Since granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims. Furthermore, granting a stay and abeyance is only appropriate when it does not appear that the petitioner has engaged in abusive litigation tactics or in intentional delay. Id. at 278.

Respondent argues that a stay "may not be appropriate" because Miller v. Alabama, 132 S. Ct. 2455 (2012), "is not retroactive to the Petitioner's case." (Dkt. No. 23 at 1.) Respondent further contends that Miller "does not provide relief to the Petitioner because, unlike the parties in Miller, Jeter faced a possibility of 30 years or life sentence and the state court considered the Petitioner['s] youth, in addition to other mitigating factors such as his cooperation and remorse prior to deciding on a sentence of life without parole." (Dkt. No. 23 at 1.)

Under the circumstances presented in the instant case, the undersigned concludes that a stay is warranted. There is good cause for Petitioner's failure to raise the issues in Ground Five and Ground Six in his original PCR proceedings. The

> claims in Grounds Five and Six are not plainly meritless, and there is no indication that Petitioner has engaged in abusive litigation tactics or intentional delay. See Rhines, 544 U.S. at 277-78.
>
> Wherefore, based upon the foregoing, the Petitioner's Motion to Amend (Dkt. No. 18) is GRANTED. It is further ORDERED that Petitioner's second Motion to Stay (Dkt. No. 19) is GRANTED. The matter is, therefore, administratively stayed until such time as Petitioner's Second PCR application is concluded. Within ten (10) days, thereof, the parties should so notify the Court. Petitioner's first Motion to Stay (Dkt. No. 10) is DISMISSED as moot.

(Dkt. No. 34.) The case was administratively stayed. (Dkt. No. 35.)

As noted in the Court's Order, Petitioner filed a second PCR action on May 25, 2013. (Dkt. No. 23-1.) In that PCR action, Petitioner brought several claims related to his life without parole sentence.[3] (Id.) Petitioner's second PCR action was dismissed on February 2, 2017. (Dkt. No. 64-1.)[4]

While Petitioner's second PCR action was pending, he filed a Motion to Supplement his original petition, seeking to add the following grounds for relief:

---

[3] Specifically, Petitioner alleged:

    (1) "Applicant's sentence of life without parole, imposed for a crime he committed when he was a juvenile, violated the Eighth Amendment to the United States Constitution and Article I, § 15 of the South Carolina Constitution."

    (2) "Applicant's sentence of life without parole violates the Eighth Amendment to the United States Constitution and Article I, § 15 of the South Carolina Constitution as an excessive and cruel and unusual punishment because he was both a juvenile and a person who did not kill or intend to kill the victim."

    (3) "Applicant's sentence of life without parole violates the Eighth Amendment to the United States Constitution and Article I, § 15 of the South Carolina Constitution, because the proceedings which led to its imposition were both procedurally and substantively inadequate."

    (4) "Applicant was denied the right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I, §§ 3 and 14 of the South Carolina Constitution, because Applicant's counsel failed to develop and present mitigating evidence which would have warranted a sentence of less than life without parole."

(Dkt. No. 23-1.)

[4] The undersigned takes judicial notice of Petitioner's underlying state court proceedings, Case Nos. 2013CP4202353, 2024CP4202561. See https://publicindex.sccourts.org/spartanburg/publicindex/ (last visited Dec. 19, 2024); see also Aloe Creme Labs., Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970) (explaining that a federal court may take judicial notice of the contents of its own records, as well as those records of other courts); Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) (same).

| | |
|---|---|
| <u>Ground One</u>: | Ineffective assistance of trial counsel |
| <u>Supporting Facts</u>: | Trial counsel failed to move for a verdict in arrest of judgment and entry of judgment of acquittal to prevent entry of judgment for amended robbery offense. |
| <u>Ground Two</u>: | Ineffective assistance of counsel |
| <u>Supporting Facts</u>: | Counsel failed to move for a verdict in arrest of judgment and entry of judgment of acquittal to prevent entry of judgment for attempted 1st degree burglary. |
| <u>Ground Three</u>: | Ineffective assistance of counsel |
| <u>Supporting Facts</u>: | Counsel failed to object to solicitor "Golden Rule" argument. |
| <u>Ground Four</u>: | Ineffective assistance of counsel |
| <u>Supporting Facts</u>: | Failed to object to victim impact evidence. |

(Dkt. No. 37.) Because Petitioner's case was stayed, the Court did not rule on the motion.

On July 27, 2015, Applicant filed a motion for resentencing of his 2006 sentence of life imprisonment without possibility of parole for murder while under the age of eighteen pursuant to *Aiken v. Byars*, 765 S.E.2d 572 (S.C. 2014). (Dkt. No. 55.) On August 2, 2016, the Honorable Leticia Verdin was assigned by the South Carolina Supreme Court to appoint counsel and handle the matter. (Dkt. No. 64-2.) On January 14, 2022, Judge Verdin filed a written order in which Petitioner was resentenced to fifty years' imprisonment. (Dkt. No. 125-1.) Following two appeals, Petitioner's resentencing was ultimately affirmed by the South Carolina Court of Appeals on May 1, 2024. (Dkt. No. 192.) The remittitur was issued on May 29, 2024. (Dkt. No. 142-1.)

On June 24, 2024, the Petitioner filed a third PCR application.[5] In this PCR application, Petitioner alleges the following claims: (1) ineffective assistance of resentencing counsel based on resentencing counsel's failure to call witnesses and "ask for minimum"; (2) lack of subject matter jurisdiction based on the trial court's "convict[ion] of a juvenile of an offense that was upgraded"; and (3) miscarriage of justice based on the trial court's purportedly improper jury charge regarding the "natural & probable consequences doctrine." Petitioner requests relief in the form of resentencing or a new trial. This PCR action remains pending in the Spartanburg County Court of Common Pleas.

On June 26, 2024, the Court lifted the stay in this case and granted Petitioner's pending Motion to Supplement (Dkt. No. 37). (Dkt. No. 196.) The Court noted that it was unclear whether Petitioner intended to add the claims set forth in his Motion to Supplement to his original Petition, or whether he intended for those claims to replace his Petition entirely. (*Id.*) The Court therefore ordered Petitioner to file an amended petition encompassing all of the grounds for relief he wished to pursue in this federal habeas action, reminding Petitioner that his amended petition would completely replace his initial petition, and emphasizing that the amended petition must contain all of his allegations and claims in one filing. Because the Court granted Petitioner's Motion to Supplement and ordered him to file an amended complaint, the Court found Respondent's pending Motion for Summary Judgment pertaining to the initial petition moot. (Dkt. No. 197.)

Petitioner filed his Amended Petition on August 2, 2024, raising the following grounds for relief (verbatim):

<u>Ground One:</u>                        Ineffective assistance of PCR counsel

---

[5] Petitioner filed another PCR application in 2014, but it was merged with his 2013 PCR application. (Dkt. No. 55.)

| | |
|---|---|
| Supporting Facts: | Failing to raise ineffective assistance of trial counsel for failing to object to judge's erroneous accomplice liability jury charge that allowed conviction of unindicted offense of armed robbery causing a constructive amendment of indictment in violation of 5th Amendment. |
| Ground Two: | Ineffective assistance of JJ counsel |
| Supporting Facts: | Failing to object to Judge's erroneous jury instruction. Judge told jury they could infer malice from intentional use of a deadly weapon in violation of 14th Amendment. |
| Ground Three: | Ineffective assistance of PCR counsel |
| Supporting Facts: | Failing to raise ineffective assistance of counsel for failing to object to the solicitor's "Golden Rule argument" asking jury to imagine how victim must feel his friend was shot and killed in his apartment. |
| Ground Four: | Ineffective assistance of PCR counsel |
| Supporting Facts: | Failing to raise ineffective assistance of JJ trial counsel for failing to object to victim impact evidence where trial judge let victim father testify and in admitting a photograph of the victim. |

(Dkt. No. 199.)

Respondent filed a Motion for Summary Judgment pertaining to the Amended Petition on October 21, 2024. (Dkt. No. 208.) Petitioner filed a Response to the motion on December 2, 2024. (Dkt. No. 214.) Respondent declined to reply by the December 9, 2024 deadline. (*Id*.) As such, the motion before the Court has been fully briefed and is ripe for habeas review.

## LEGAL STANDARD

### I. Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Rule 12, Rules Governing § 2254 Cases (stating courts may apply in habeas cases any of the Federal Rules of Civil Procedure to the extent they are not inconsistent with statutes or the § 2254 rules). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In ruling on a motion for summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *The News & Observer Publ'g Co.*, 597 F.3d at 576 (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990).

### II. Habeas Standard of Review

Habeas corpus in federal court exists to "guard against extreme malfunctions in the state criminal justice systems." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citation and internal quotation marks omitted). Federal habeas is neither an alternative to state-court relief nor an additional chance to appeal erroneous state-court rulings. *See id.* That preference for, and

deference to, state courts is borne out in the various constraints placed on federal courts. *See Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (per curiam) (stating § 2254 "imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases"); *see also Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (stating § 2254 "reflect[s] a presumption that state courts know and follow the law" (citation and internal quotation marks omitted)).

Since the Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 322–23 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Federal courts must also defer

to state courts' factual determinations, which are presumed correct until the prisoner rebuts that presumption with clear and convincing evidence. § 2254(e)(1).

In addition, before state prisoners may try to clear those high hurdles, two rules steer them to first pursue all relief available in the state courts. *See* § 2254(b)(1). The first, known as exhaustion of remedies, requires a prisoner to present his claims to the highest state court with jurisdiction to decide them. *Stewart v. Warden of Lieber Corr. Inst.*, 701 F. Supp. 2d 785, 790 (D.S.C. 2010). A federal court cannot grant a prisoner's habeas corpus petition until he exhausts his state-court remedies. § 2254(b)(1), (c). The second rule, called procedural default, comes into play when a prisoner failed to present a claim to the state courts at the appropriate time and has no means of doing so now. *Stewart*, 701 F. Supp. 2d at 790. Federal courts may not consider a procedurally defaulted claim unless the prisoner shows either that he has cause for defaulting and that the alleged violation of federal law prejudiced him or that not addressing the claim would be a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In considering whether Petitioner should receive habeas relief under these standards, the undersigned has carefully considered the record before the Court.

## **DISCUSSION**

Respondent argues that summary judgment is appropriate here because the Petitioner's grounds for relief are untimely and because Petitioner's claims must be dismissed under 28 U.S.C. § 2254(i) and *Martinez v. Ryan*, 566 U.S. 1 (2012). (Dkt. No. 211 at 10–15.) For the reasons set forth in greater detail below, the undersigned finds that: (1) Petitioner's second ground for relief is procedurally defaulted and, even if it was not, it lacks merit; and (2) Petitioner's first, third, and fourth grounds for relief are procedurally defaulted and are not "substantial" ineffective assistance of counsel claims such that their procedural default can be

excused. Accordingly, the undersigned **RECOMMENDS** that Respondent's summary judgment motion (Dkt. No. 208) should be **GRANTED** and the Amended Petition should be **DISMISSED**.[6]

## I.    Ineffective Assistance of Trial Counsel (Ground Two)[7]

### A.    Procedural Default

Although briefly described above, the undersigned finds a more in-depth summary of the doctrine of procedural default instructive here. Courts often use the word "exhaustion" when defining "procedural default," but under the law the doctrine of procedural default is separate from the exhaustion requirement in the habeas context. As to exhaustion, 28 U.S.C. § 2254(b)(1) requires that a petitioner exhaust his remedies in state court before a habeas petition may be granted. "In order to exhaust [] collateral claims in state court, a South Carolina habeas corpus petitioner must pursue a direct appeal and/or file an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10–160." *Chronister v. South Carolina*, No. 2:08-cv-3194-HMH-RSC, 2009 WL 1444507, at *9 (D.S.C. May 20, 2009).

In addition to fully pursuing the remedies available in state court, a petitioner must also have previously presented to the state courts the individual claims he wishes the federal court to review in the habeas action. If he has not properly presented the claim to a state court for adjudication, it is deemed procedurally defaulted. A claim is deemed procedurally defaulted if a state court has rejected it based on an independent and adequate state procedural rule. *See*

---

[6] Because Petitioner's claims are clearly procedurally barred, the Court need not consider whether they are timely.

[7] In his summary judgment motion, Respondent asserts that he is entitled to summary judgment as to Ground Two because it is untimely, procedurally defaulted, and "barred because [it] has no merit as a substantial claim under *Martinez*." (Dkt. No. 211 at 43.) The undersigned notes that *Martinez v. Ryan*, 566 U.S. 1, 9 (2012) applies narrowly to permit inadequate assistance of counsel at initial-review collateral proceedings to establish cause for a procedurally defaulted claim of ineffective assistance of trial counsel. Here, the Amended Petition makes no allegations regarding inadequate assistance of counsel at Petitioner's initial-review collateral proceeding pertaining to Ground Two; rather, Petitioner specifies that he "[b]ring[s] claim two[] under Rule 52(b) F.R.C.P. plain error or any rule the Court [d]eem[s] just." (*See generally* Dkt. No. 199.)

*Coleman v. Thompson*, 501 U.S. 722, 729 (1991) ("The [independent and adequate state ground] doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement."). But also, "[i]f claims were not exhausted in state court but would now be procedurally barred if brought in state court, then federal courts can treat the claims as if they were procedurally defaulted in the state courts." *Clagett v. Angelone*, 209 F.3d 370, 378 (4th Cir. 2000).

In *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004), the Fourth Circuit explained the policy behind the procedural default doctrine and also described what it means for a claim to have been properly presented to the state court:

> [The] exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseem[liness] of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (internal quotation marks and citation omitted). Thus, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *Id.* at 845. And this opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (citing *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (internal quotation marks omitted)). In other words, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

*Longworth*, 377 F.3d at 448.

To overcome procedural default and have a claim considered by the federal habeas court, a petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Here, Petitioner did not raise his claim that trial counsel should have objected to the inferred malice jury instruction (Ground Two) as a ground for post-conviction relief, and there is no mention of this claim anywhere in the state court records. Because Petitioner never presented the claim in state court, it is procedurally defaulted. *See Longworth*, 377 F.3d at 448.

Petitioner does not dispute that Ground Two is procedurally defaulted. (Dkt. Nos. 199, 214.) Further, Petitioner fails to articulate cause and prejudice for the procedural default,[8] or to sufficiently explain how this Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."). This claim should therefore be dismissed.

### B. Merits

In the event the District Judge disagrees with the undersigned's recommendation that Ground Two is procedurally defaulted, the undersigned has also addressed its merits. As noted,

---

[8] To the extent Petitioner asserts that "plain error" exists, relying on Rule 52(b) of the Federal Rules of Criminal Procedure, the Court notes that this argument is inapplicable in a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as a federal court's review is bound to the stricter standard of "cause and actual prejudice." *See Wilson v. Murray*, 806 F.2d 1232, n.2 (4th Cir. 1986) (citing *Wainwright v. Sykes*, 433 U.S. 72 (1977)); *see also Engle v. Isaac*, 456 U.S. 107, 134–35 (1982) (rejecting the application of plain error review to federal habeas challenges to state convictions and finding "the burden of justifying federal habeas relief for state prisoners is 'greater than the showing required to establish plain error on direct appeal'") (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). As noted, Petitioner has failed to show cause and actual prejudice. Further, although the Amended Petition makes no allegations regarding inadequate assistance of counsel at Petitioner's initial-review collateral proceeding pertaining to Ground Two, (*see generally* Dkt. No. 199), Petitioner includes the following sentence in his response in opposition to Respondent's summary judgment motion: "Pro se plaintiff also believes that if [Federal Rule of Criminal Procedure 52(b)] is not a proper avenue to hear [his] case . . . , then it should be raised under cause and prejudice under Martinez v. Ryan 132 s. ct. 1309 (2012)." (Dkt. No. 214 at 12.) However, the undersigned notes that Petitioner cannot demonstrate that Ground Two is a "substantial" ineffective assistance of trial counsel claim for the reasons set forth in Section I.B., and that any claim by Petitioner that his procedural default of Ground Two should be excused pursuant to *Martinez* would therefore fail.

Petitioner contends in Ground Two that his trial counsel was ineffective in "failing to object to [the] judge['s] erroneous jury instruction [in which the judge] told [the] jury they could infer malice from intentional use of a deadly weapon, in violation of [the] 14th Amendment." (Dkt. No. 199 at 1.)

Under the Sixth Amendment, Petitioner, as a criminal defendant, had a right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Petitioner may prove ineffective assistance of counsel by showing that his attorney's performance was deficient, and that such deficiency prejudiced him. *Id.* at 687. An attorney's performance is deficient if it was unreasonable under the circumstances of the case and under then-prevailing professional norms. *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). Prejudice is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Kimmelman*, 477 U.S. at 384.

The jury instruction at issue in Ground Two reads:

Now, the words expressed or implied malice do not mean different kinds of malice but only the manner in which malice may be shown to have existed, that is to say by either direct evidence or by circumstantial evidence inferring or implying the existence of malice.

Now, as I have told you, an inference is simply a deduction of fact which may logically and reasonably be drawn from the proof of some other fact or set of facts.

Now, malice may be expressed malice as where there is an expressed threat to kill or there is a lying in wait or where the circumstances show directly that an intent to kill was entertained by the person committing the crime. Malice may be inferred, though no expressed intent to kill is proven by direct evidence, where the facts and the circumstances which have been proven by the evidence in the case satisfy you beyond a reasonable doubt that malice was present in the mind of the slayer at the time any killing took place.

Now, the existence of malice may be inferred from the circumstances shown to have existed at the time of the event. And under the law you are permitted to infer the existence of malice from proof of an unlawful and intentional killing of another person without justification or legal excuse. You may infer the existence of malice from proof of a wrongful intent to injure another person through the infliction of serious bodily harm indicative of a wicked or depraved spirit.

*You are permitted to infer the existence of malice from proof of the intentional use of a deadly weapon which results in death to another*, or you are permitted to infer the existence of malice from proof of the intentional commission of an act which is inherently dangerous to human life. . . .

(Dkt. No. 14-14 at 43–44) (emphasis added.)

As pointed out by Respondent, the instruction that malice may be implied from use of a deadly weapon is no longer consistent with South Carolina law. *State v. Burdette*, 832 S.E.2d 575, 582 (S.C. 2019) ("A jury instruction that malice may be inferred from the use of a deadly weapon is an improper court-sponsored emphasis of a fact in evidence—that the deed was done with a deadly weapon—and it should no longer be permitted."); *State v. Belcher*, 685 S.E.2d 802, 803 (S.C. 2009) ("[W]e hold today that a jury charge instructing that malice may be inferred from the use of a deadly weapon is no longer good law in South Carolina where evidence is presented that would reduce, mitigate, excuse or justify the homicide."), *overruled by Burdette, supra*.[9] However, at the time of Petitioner's trial in 2006, the implied malice instruction was still good law.

Indeed, in *Belcher*, the South Carolina Supreme Court announced "a clear break from [its] modern precedent," and, thus, the court limited the ruling to Belcher's case and to "all cases which are pending on direct review or not yet final where the issue is preserved." 685 S.E.2d at

---

[9] The undersigned notes that the South Carolina Supreme Court's decision in *Belcher* was based on state law, not an application of the United States Constitution. Furthermore, the court acknowledged that its decision was upending "what ha[d] been treated as a settled fixture in our criminal law." *Belcher*, 685 S.E.2d at 809. Nevertheless, the court was "firmly convinced that instructing a jury that 'malice may be inferred by the use of a deadly weapon' is confusing and prejudicial where evidence is presented that would reduce, mitigate, excuse or justify the homicide." *Id.*

810. The court specifically held that its "ruling . . . will not apply to convictions challenged on post-conviction relief." *Id.*

On the date Belcher was decided—October 12, 2009—Petitioner's direct appeal had concluded, and he had filed his first PCR application. (Dkt. No. 211 at 3.)[10] Thus, Petitioner cannot demonstrate that his trial counsel was ineffective under *Strickland*. *See United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019) ("A lawyer does not perform deficiently by failing to raise novel arguments that are unsupported by then-existing precedent. Nor does counsel fall below *Strickland*'s standard of reasonableness by failing to anticipate changes in the law, or to argue for an extension of precedent." (internal citations omitted)); *Almon v. United States*, 302 F. Supp. 2d 575, 586 (D.S.C. 2004) ("There can be no ineffective assistance of counsel for failing to raise a claim which is not legally viable." (citing *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994); *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999))); *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions."). Accordingly, Ground Two fails on the merits and should be **DISMISSED** for this reason, as well.

## II.    Ineffective Assistance of PCR Counsel (Grounds One, Three and Four)

It appears undisputed that Petitioner's remaining grounds for relief—Grounds One, Three, and Four—are procedurally defaulted. (*See generally* Dkt. No. 211, 214.) Indeed, the Amended Petition explains that these grounds for relief are brought "under *Martinez v. Ryan*." (Dkt. No. 199 at 2.) As noted, Respondent contends that these remaining claims must be

---

[10] Petitioner argues he is "not bringing this issue under *Belcher*" and instead relies on *Sandstrom v. Montana*, 442 U.S. 510 (1979), and *Cnty. Ct. of Ulster Cnty., N. Y. v. Allen*, 442 U.S. 140, 141 (1979). (Dkt. No. 214-1 at 2.) However, Petitioner does not offer any cognizable explanation as to how or why these cases support a claim that the trial court's inferred malice charge was unconstitutional at the time Petitioner was tried. As noted, at the time of Petitioner's conviction, the law in South Carolina was that malice could be inferred from the use of a deadly weapon.

dismissed under 28 U.S.C. § 2254(i) and *Martinez v. Ryan*, 566 U.S. 1 (2012). The undersigned considers Respondent's arguments, below.

### A. Legal Standards

Typically, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings" is not a ground for relief under § 2254. 28 U.S.C. § 2254(i); *see also Martinez v. Ryan*, 566 U.S. 1, 9 (2012) ("[A]n attorney's ignorance or inadvertence in a [PCR] proceeding does not qualify as cause to excuse a procedural default."). Thus, to the extent Petitioner is asserting independent claims of ineffective assistance of PCR counsel, the undersigned agrees with Respondent that such claims are not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *Lawrence v. Branker*, 517 F.3d 700, 717 (4th Cir. 2008) ("[E]ven where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself.").

However, *Martinez v. Ryan*, 566 U.S. 1, 9 (2012) created a narrow exception permitting inadequate assistance of counsel at initial-review collateral proceedings to establish cause for a procedurally defaulted claim of ineffective assistance of trial counsel where:

> the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective-assistance-of-counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (alteration in original) (quoting *Martinez*, 566 U.S. at 14–16). An underlying ineffective-assistance-of-counsel claim is "substantial if it has 'some merit.'" *Richey v. Cartledge*, 653 F. App'x 178, 184 (4th Cir. 2016) (quoting *Martinez*, 566 U.S. at 14). "Relatedly, to show ineffective assistance, the petitioner must make a 'substantial' showing with respect to both counsel's competency . . . and prejudice." *Teleguz v. Zook*, 806 F.3d 803, 815 (4th Cir. 2015). To make a substantial showing of incompetency, Petitioner must demonstrate "'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the Sixth Amendment.'" *Id.* (quoting *DeCastro v. Branker*, 642 F.3d 442, 450 (4th Cir. 2011)). To make a substantial showing of prejudice, Petitioner must demonstrate "that 'counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable,' i.e., that there was 'a substantial, not just conceivable, likelihood of a different result.'" *Id.* (quoting *DeCastro*, 642 F.3d at 450).

### B. Ground One

In Ground One, Petitioner asserts that his PCR counsel was ineffective because PCR counsel failed to raise an ineffective assistance of trial counsel claim based on trial counsel's failure to object to an allegedly erroneous accomplice liability jury charge at his trial, which purportedly allowed Petitioner's conviction for "an unindicted offense of armed robbery causing a constructive amendment of indictment" in violation of Petitioner's Fifth Amendment rights. (Dkt. No. 199 at 1.) At the outset, the undersigned notes that "[v]ariances and other deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." *See Ashford v. Edwards*, 780 F.2d 405, 407 (4th Cir. 1985). Here, Petitioner seems to claim a constitutional violation based on such a "variance or deficiency" in

his armed robbery indictment, but the record does not support his contention. Rather, the record reflects that Petitioner was indicted for attempted armed robbery in August 2005, and convicted of the same at the conclusion of his March 2006 trial. (Dkt. No. 14-14 at 60–61, 69; Dkt. No. 23-3 at 1–12.)[11] Accordingly, any ineffective assistance of counsel claim Petitioner attempts to assert on this basis lacks merit and should be dismissed.

With respect to the jury instruction Petitioner mentions in Ground One, Respondent asserts that "Petitioner has failed to assert how any particular challenge should have been raised [against] these instructions by either reasonable PCR counsel . . . or by reasonable trial counsel," and that there is no basis for objection because "accomplice liability had a basis in the jury instruction." (Dkt. No. 211 at 22–23.) The jury instruction at issue reads:

> Now, in this case the state is alleging that each of these defendants is guilty of the crimes of burglary first degree and attempted armed robbery and murder under the legal theory of principal and accomplice liability.
>
> Now, with regard to accomplice liability, you are instructed that the law provides that where two or more people acting together with a common intent and purpose to combine, conspire, plan or otherwise agree to the commission of a crime, each person who is present to aid, abet, assist or otherwise participate in the commission of that crime is equally guilty. The hand of one becomes the hand of all, and the act of one becomes the act of all.
>
> Any person who joins with another to accomplish an illegal purpose is held to be criminally responsible for everything done by any other person which occurs as a natural and probable consequence of the facts done pursuant to and in furtherance of the common plan and purpose.
>
> Now, prior knowledge by a defendant that some person is intending to commit a crime without more is not sufficient to make that person guilty of the crime of which he may be shown to have knowledge.

---

[11] It appears that Judge Cole misspoke in the trial transcript when he stated that Petitioner was indicted for and found guilty of "armed robbery." (Dkt. No. 14-14 at 60.) However, he correctly charged the jury with "attempted armed robbery" and referenced Petitioner's indictment for and conviction of "attempted armed robbery" at sentencing. (*Id.* at 40, 71.) Further, the indictment and disposition of the indictment contained in the record reflect that Petitioner was indicted for and convicted of attempted armed robbery. (Dkt. No. 23-3 at 1–3.)

Likewise, the mere presence of a defendant at the scene of a crime or in close proximity thereto, even with knowledge that another is intending to commit a crime, is not sufficient standing alone to prove that defendant guilty of the crime as an accomplice.

In order for a defendant to be found guilty of a crime under the legal theory of accomplice liability it must be proven beyond a reasonable doubt that that defendant was actually present at the scene of the crime with the intention of aiding, abetting, assisting or participating in the common plan or scheme which culminates in the commission of a crime.

Under the legal theory of accomplice liability two or more persons may be found guilty of an unlawful homicide even though only one person actually commits the act which is directly responsible for the death of another.

The law provides that when two or more persons combine or conspire or agree to the commission of a felony such as burglary in the first degree, as well as armed robbery, and in the commission of criminal acts done in furtherance of that crime or crimes a homicide is committed by one of the participants in that crime or those crimes, which is a natural and probable consequence of those acts done in furtherance of the common plan, then all who are present and participating in those criminal acts are equally as responsible as the one who actually commits the fatal act.

Now, the common purpose may not have been to kill anyone at all, but if, during the commission of a felony such as burglary in the first degree or armed robbery, a homicide is committed by one of the participants which is a natural or probable consequence of the acts done in furtherance of the common plan, then each person who is present aiding abetting, assisting or participating in the common plan is equally guilty of any homicide accomplished thereby and which is a natural and probable consequence of those criminal acts.

And therefore an accomplice of an aider and abetter would be just as responsible for that unlawful homicide as that person who is directly responsible for committing the fatal act. Again, under the law the act of one is the act of all, and all are guilty thereby.

(Dkt. No. 14-14 at 48–50.)

Upon review, the undersigned finds no basis for Petitioner's contention that his trial counsel erred in failing to object to this jury charge, nor his contention that his PCR counsel provided ineffective assistance by failing to raise this purported error of trial counsel during Petitioner's PCR proceedings. Indeed, an accomplice liability jury charge was clearly warranted

under the facts of Petitioner's case, (*see supra* at 2–6), and Petitioner does not claim otherwise, (*see generally* Dkt. No. 214).

Further, the trial court instructed the jury on the crime of murder before instructing the jury on accomplice liability and instructed that murder was causing the death of another with malice aforethought: "it would be necessary that the evidence in this case has established to your satisfaction beyond a reasonable doubt that a defendant or an accomplice did commit some act or acts which proximately caused the death of Tavaris Howze and that the killing was done by a defendant with malice aforethought." (Dkt. No. 14-14 at 43.) As such, the trial court distinguished the first element (proximately causing the death of another, which can be proved by accomplice liability) and the second element (malice aforethought, which must be possessed by the defendant) of murder. *See* S.C. Code Ann. § 16-3-10 (defining murder as "the killing of any person with malice aforethought, either express or implied").

The trial court then explained malice. (Dkt. No. 14-14 at 43–47.) In doing so, the trial court used permissive language in stating that the jury was allowed to infer malice from circumstantial evidence, specifically instructing the jury that they were permitted to "infer the existence of malice from proof of the initial commission of criminal acts resulting in the death of another person during the commission of a felony which is dangerous to human life, or where the circumstances of the crime create a substantial foreseeable risk to human life." (*Id.* at 45.) The trial court continued on to instruct the jury that, while it was permitted to infer the existence of malice based on circumstantial evidence, the jurors were "in no way required to make that inference" if they did not find it to be reasonable and appropriate based upon their view of the facts of the case. (*Id.* at 46.) The trial court also instructed that the State was required to prove malice beyond a reasonable doubt and reiterated that "[t]he state is required to prove malice just

as it must prove any other essential element of the crime beyond a reasonable doubt." (*Id.*). The trial court again stated that "the state must prove beyond a reasonable doubt that a killing did occur and that it was accompanied by malice aforethought in order to establish the crime of murder . . . ." (*Id.* at 47.) Only then did the trial court instruct the jury on accomplice liability, charging that "each person who is present aiding, abetting, assisting or participating in the common plan is equally guilty of any homicide[12] accomplished thereby and which is a natural and probable consequence of those criminal acts." (*Id.* at 50.)

Thus, to the extent Petitioner attempts to claim that the trial court's accomplice liability jury charge shifted the burden of proof on malice, this argument lacks merit. Here, the trial court's jury charge included permissive language indicating that the jury *may* infer malice from the Petitioner's participation, not that it must. *Cf. Lowry v. State*, 376 S.C. 499, 506, 657 S.E.2d 760, 764 (2008) ("Viewed in its entirety, the supplemental jury charge contained no permissive language indicating that the jury *may* infer malice from Petitioner's participation in the armed robbery. Instead, the charge simply provided that if the jury first determined that a killing occurred in the course of the armed robbery, it *must* find Petitioner guilty of murder. In this way, the charge created a mandatory presumption of the malice element in the crime of murder instead of permitting the jury to find malice upon the State's proof of the element beyond a reasonable doubt. Both this Court and the United States Supreme Court have consistently held that such mandatory presumptions of malice violate a defendant's due process.").

In light of the foregoing, the undersigned simply cannot conclude that Ground One sets forth a substantial ineffective assistance of counsel claim such that Petitioner's procedural

---

[12] The trial court did not charge that an accomplice is equally guilty of *murder*, but of *homicide*, i.e., causing the death of another—this does not presume malice, an entirely separate element of murder. *See Lyles v. Reynolds*, No. 6:15-cv-04229-RMG, 2016 WL 4940319, at *6 (D.S.C. Sept. 14, 2016); S.C. Code Ann. § 16-3-10 (defining murder as "the killing of any person with malice aforethought, either express or implied").

default of Ground One should be excused under *Martinez*. The undersigned therefore **RECOMMENDS** that Ground One should be **DISMISSED**.

### C. Ground Three

In Ground Three, Petitioner claims that his PCR counsel was ineffective in failing to raise an ineffective assistance of trial counsel claim based on trial counsel's failure to object to the solicitor's "Golden Rule" argument, in which the solicitor asked the jury to "imagine how [the] victim must feel [because] his friend was shot and killed in his apartment." (Dkt. No. 199 at 2.) In response, Respondent again asserts that Petitioner cannot show that this claim is "substantial" such that it falls within the parameters of *Martinez*. (Dkt. No. 211 at 27.)

More specifically, Respondent asserts that the solicitor only briefly mentioned Clarence Spicer in his closing argument, stating:

> Thank you, Your Honor. It's about over, ladies and gentlemen. It has been a long week. And as both attorneys said, this is a very important case.
>
> You have met Ernest Howze who testified – the mother of Travaris and the father of Travaris. The mother of Travaris is seated beside him. *You have seen Mr. Spicer. He has been here all week. Imagine how he must feel. His friend was shot and killed in his apartment.* I submit to you, ladies and gentlemen, what you have heard this week is a tale of two friends, two groups of friends. You have got Tavaris, Clarence and Brian doing something they do or did on an everyday basis almost. They visited with each other. They enjoyed each other's company . . .

(Dkt. No. 14-14 at 7) (emphasis added.) Respondent contends that Petitioner's ineffective assistance of counsel argument based on the foregoing statement does not violate the "Golden Rule" because "the solicitor did not ask jurors to place themselves in the position of any of the parties, the victim, or the victim's family member." (Dkt. No. 211 at 29.) Thus, Respondent contends that "it does not appear that an objection based on the 'Golden Rule' would have been sustained." (*Id*.) Further, Respondent asserts that Petitioner cannot show prejudice from the solicitor's statement because it did not so infect the trial with unfairness as to make Petitioner's

resulting conviction a denial of due process and because there was no reasonable probability that Petitioner would have been acquitted but for the remark. (*Id.* at 30.)

The undersigned agrees that Petitioner has failed to show that Ground Three is a "substantial claim" such that his procedural default can be excused under *Martinez*. "In a Golden Rule argument, jurors are urged to place themselves in the position of a party, a victim, or a victim's family member and decide the case from that perspective." *Brown v. Cartledge,* C.A. 9:09-cv-2254-JFA-BM, 2010 WL 2733858, at *6 (D.S.C. June 10, 2010) (quoting *Gilchrist v. Hagan,* No. 06–1236, 2007 WL 951749 at *29 (D.S.C. Mar. 27, 2007)), *adopted*, 2010 WL 2730882 (D.S.C. July 9, 2010). "However, [t]he law is clear that although it is improper to ask jurors to place themselves in the position of a party, such a 'golden rule' argument does not constitute reversible error if no prejudice arise[s] from counsel's comment." *Id.* (quoting *Ladantae v. Koppel*, C.A. No. 07–2176, 2010 WL 2025586, at *13 (D. Md. May 19, 2010)).

Here, the solicitor did not ask the jurors to place themselves in the position of a party, a victim, or victim's family member *and decide the case from that person's perspective*. (Dkt. No. 14-14 at 7.) Rather, the solicitor asked the jury only to imagine how Spicer must feel. (*Id.*) Consequently, it is not clear that the solicitor violated the "Golden Rule." (*Id.*)

What is more, the record does not reflect a lack of evidence against Petitioner such that the solicitor's isolated comment about Spicer would have substantially prejudiced him. As described in greater detail above, the State presented significant evidence against Petitioner. (*See supra* at 2–6.) In fact, Petitioner's own testimony confirmed that Petitioner went to Spicer's apartment on the night Howze was killed, that he wore a mask, that he had a gun, and that he ran away from the scene after shots were fired. (*See supra* at 2–6.)

Petitioner provides nothing more than mere speculation to establish that there is a reasonable probability he would have been acquitted but for the solicitor's remarks,[13] (*see generally* Dkt. No. 214), and the record before the Court simply does not support a finding that the solicitor's isolated remarks were so prejudicial as to render Petitioner's conviction invalid. *Singletary v. McFadden*, No. 8:13-cv-0804-RBH-JDA, 2014 WL 1314923, at *13 (D.S.C. Feb. 7, 2014) (declining to excuse procedural default on "Golden Rule" claim where "the Solicitor's remarks, while improper, were limited in scope and duration—several sentences over the period of a three day trial"), *adopted as modified*, 2014 WL 1314856 (D.S.C. Mar. 31, 2014). Ground Three therefore lacks merit and should be **DISMISSED**.

### D. Ground Four

In Ground Four, Petitioner claims that his PCR counsel was ineffective in failing to assert that Petitioner's trial counsel was ineffective because he did not object to "victim impact evidence where [the] trial judge let [the] victim['s] father testify and [admitted] a photograph of the victim." (Dkt. No. 199 at 2.) In response, Respondent asserts that "the brief testimony of the victim's father should not cause the grant of federal habeas relief," and that "admission of the [victim's photograph] was harmless." (Dkt. No. 211 at 32–33.) More specifically, Respondent

---

[13] In his response brief, Petitioner states, confusingly:

> The effect that the golden rule argument had on the jury is plain and simple. The jury acquitted me of the state's accomplice liability theory when they found me guilty of armed robbery and att 1st degree burglary neither charge was Jeter indicted on and they still found me guilty of murder under the accomplice liability theory. so you see asking the jury to place themselves in the victim shoes tended to completely destroy all sense of impartiality of the jurors and its effect aroused passion and prejudice. The jury must convict defendant on charges he was indicted on jury cannot just convict defendant of any charge especially if it was not a underlying offense to the felony murder.

(Dkt. No. 214 at 14.) The undersigned cannot discern a cognizable argument from these claims. Petitioner was indicted for murder, burglary in the first degree, attempted armed robbery, and possession of a pistol by a person under the age of twenty-one, and convicted of murder, attempted burglary in the first degree, attempted armed robbery, and possession of a pistol by a person under the age of twenty-one. (Dkt. No. 14-14 at 60–61; Dkt. No. 23-3 at 1–12.) Petitioner's contentions seem to reflect a misunderstanding of the felony murder rule.

claims that "even if we assume the evidence had limited probative value, the admission of the evidence was harmless," because "there is no reasonable probability that the result of the proceeding would have been different had the testimony of [Howze's father] and the photograph been excluded." (*Id.* at 33.) The undersigned agrees.

As with Ground Three, Petitioner has not demonstrated that he was so prejudiced by the testimony and/or photograph at issue such that he should be entitled to habeas relief. Petitioner again provides mere speculation that the outcome of his trial would have been different had the evidence at issue not been presented, stating only that testimony and photograph "arouse[d] the sympathy or prejudice of the jurors," and that the jurors "heard more testimony about the victim from the victim's father than about how defendant was a juvenile and how juvenile[s] differ from adult[s] and how a juvenile brain is not fully developed." (Dkt. No. 214 at 16–17.) However, Petitioner's conjecture is insufficient to establish prejudice and the Court finds nothing in the record to suggest that the victim's father's testimony or the photograph of the victim were markedly prejudicial. Again, the State presented overwhelming evidence against Petitioner, including: his own testimony that he went to Spicer's apartment on the night Howze was killed, wearing a mask and holding a gun; his co-defendant's testimony that he was at Spicer's house when Howze was killed; and eye-witness testimony of him running away from the scene of the crime. (*See supra* at 2–6.)

Considering the entirety of the evidence presented, the undersigned finds it unlikely that any "sympathy aroused" by the photograph and testimony at issue was significant enough to influence the outcome of Petitioner's trial. *See, e.g.*, *State v. Owens*, 831 S.E.2d 126, 131 (S.C. Ct. App. 2019) ("To warrant reversal, however, Owens must show the error prejudiced him, meaning the challenged evidence likely influenced the verdict. . . . Viewing the record as a

whole, it is unlikely the emotional pull of the photograph was enough to distract a rational juror from the main issues at trial or otherwise influence the verdict." (internal citation omitted)), *aff'd*, 860 S.E.2d 357 (2021). Accordingly, Petitioner has failed to demonstrate that his trial counsel's failure to object to the "victim impact evidence" was an error so serious as to deprive him of his Sixth Amendment right to counsel, or his right to a fair trial. In other words, Petitioner's attempt to cure his procedural default of Ground Four through *Martinez* fails, and such claim must therefore be **DISMISSED**.

### Certificate of Appealability

If the Respondent's summary judgment motion is granted, the District Judge will need to decide whether to issue a certificate of appealability. *See* Rule 11(a), Rules Governing § 2254 Cases. A certificate may be issued only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been denied on the merits, the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller–El v. Cockrell*, 537 U.S. 322, 338 (2003) (citation and quotation marks omitted). The undersigned sees no reason to grant a certificate of appealability and would, therefore, recommend denying the certificate of appealability.

## CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that the Court **GRANT** Respondent's Motion for Summary Judgment (Dkt. No. 208). The undersigned further **RECOMMENDS** that the Court **DISMISS** this case with prejudice and **DECLINE** to issue a certificate of appealability.

**IT IS SO RECOMMENDED.**

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

January 6, 2025
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).