IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Joshua Jeter,                                          )
                                                       )
                    Petitioner,                        )
                                                       )        Civil Action No. 2:13-cv-460-BHH
v.                                                     )
                                                       )        **<u>ORDER</u>**
Warden Perry Correctional Institution,                 )
                                                       )
                    Respondent.                        )
_____ )

This matter is before the Court upon Petitioner Joshua Jeter's ("Petitioner" or "Jeter") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On October 21, 2024, Respondent filed a motion for summary judgment (ECF No. 208), and the matter was referred to a United States Magistrate Judge for preliminary determinations in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2), D.S.C.

On January 6, 2025, the Magistrate Judge issued a report and recommendation ("Report"), outlining the issues and recommending that the Court grant Respondent's motion for summary judgment, dismiss this case with prejudice, and decline to issue a certificate of appealability. (ECF No. 218.)

On January 28, 2025, the Court entered an order adopting the Magistrate Judge's Report after it had not received any written objections; however, the Court subsequently received a letter from Petitioner on February 18, 2025, asserting that he had never received a copy of the Report. (ECF Nos. 220, 223.) Accordingly, in a text order entered on February 19, 2025, the Court vacated its January 28 order and judgment (ECF Nos. 220, 221) and reopened the matter. (ECF No. 224.) The Court directed the Clerk to mail another copy of the Report to Petitioner and granted him until March 10, 2025, to file

objections to the Report.  (*Id.*)

On March 13, 2025, Petitioner filed a motion for an extension of time to file objections, which the Court granted.  (ECF Nos. 228, 229.)  Petitioner thereafter filed his objections on March 21, 2025, and he also filed a supplemental letter and memorandum in October of 2025.  (ECF Nos. 231, 232, 233.)

Now, for the reasons set forth below, the Court overrules Petitioner's objections and adopts the Magistrate Judge's Report, thereby granting Respondent's motion for summary judgment.

## BACKGROUND

The Spartanburg County Court of General Sessions indicted Petitioner for murder in February of 2005, and he was subsequently indicted for burglary in the first degree, attempted armed robbery, and possession of a pistol by a person under the age of twenty-one.  (ECF No. 23-3 at 1-12.)  Petitioner and his co-defendant, Lance Lyles, proceeded to trial before the Honorable J. Derham Cole in March of 2006.  (*See* ECF Nos. 14-10 through 14-13.)  At trial Petitioner was represented by attorney J. Patricia Anderson ("trial counsel"), and his co-defendant was represented by Richard W. Veith.  (ECF No. 14-10 at 3.)

The evidence presented at trial showed that a twenty-year-old man named Travaris Howze was shot and killed on December 8, 2024, while he was visiting a neighbor, Clarence Spicer, at his apartment.  According to the State's evidence, the defendants arrived at the door, and after the door was opened, Spicer observed a man with a hood over his head, who stated "what's up," as well as a second man wearing a mask and standing behind the man with the hood.  (*See generally* ECF Nos. 14-10 through 14-13.)  When Spicer attempted to close the door, one of the men fired a gunshot into the

2

apartment, striking Howze in the head and killing him.  (*Id.*)  The State's theory of the case was essentially that the defendants were acting in concert attempting to burglarize Spicer while brandishing weapons, when their plan was interrupted by Spicer fighting back, and Howze died as a result.  (*Id.*)

Relevant to Petitioner, the State presented witness statements and testimony, including from Clarence Spicer, Scott Hill, Officer William Swanland, and Sergeant Chris Taylor, indicating that Petitioner was guilty.   (*Id.; see also* ECF No. 218 at 2-5) (summarizing the State's evidence).)  Petitioner's defense, on the other hand, focused on attempting to show that Petitioner and Lyles visited Spicer's apartment to buy drugs.  (ECF No. 14-12 at 62-156.)  In support of this defense, Petitioner proffered the testimony of Robert Ledford, a former neighbor of Spicer, and Petitioner testified in his own defense. (*Id.* at 85-142.)  Among other things, Petitioner testified that: he had a gun on him the night of December 8, 2004; Lyles suggested they "go get some weed" from his friend; they walked over to his friend's apartment; Petitioner wore a mask on his face "to keep his nose warm"; Lyles wore the hood of his jacket up on his head; Lyles did not tell him anything about where they were going; when they arrived at the friend's apartment, Petitioner walked over by the balcony and Lyles knocked on the door; when the "guy" answered the door, Petitioner turned around and walked to the door to see what was going on because Lyles was not entering the apartment as he usually would when he was buying marijuana; Petitioner said "what's up" to the guy at the door; Petitioner then turned to look at Lyles, who was "making a weird face" and had his right hand in his back pocket with his hand on his gun; Lyles began to pull his gun out; Petitioner pulled his gun after seeing Lyles do the same; Petitioner tried to ask Lyles what was going on when the "guy" tried to close the

3

door; Lyles then pushed against the door with his foot; when Lyles pushed up against the door, Petitioner started walking towards the stairs before suddenly hearing two gunshots; he ran down the stairs and Lyles came running behind him; they both ran away with their guns out; Petitioner remembered seeing a "guy on the path" while he was running away; his gun had no bullets in it, so nothing would have happened if he had fired it; he did not know anyone had been shot when we was running away; he did not plan to rob anyone, steal anything, or kill anyone; Lyles told him after the incident "that the guy owed him some weed . . . [but] wouldn't give him his week." (*Id.*)

Petitioner's co-defendant, Lyles, also testified. (ECF No. 14-13 at 45-111.) Among other things, Lyles testified that: when they arrived at the apartment, he told Petitioner to wait on the side while he bought the marijuana; Lyles knocked on the door and Spicer opened it; Lyles said "what's up" and asked if Spicer had "any weed today"; Spicer said he did not and it would take him about thirty minutes to get some, and "then that's when the commotion and everything just rushed in"; Petitioner "pounded [Lyles] in" and "overpowered" him; Lyles heard a firearm discharge; Lyles "got scared and ran"; Lyles was not trying to force his way into Spicer's apartment; Lyles did not have a weapon with him on the night of December 8, 2004. (*Id.*) Lyles also denied "ever [being] shortchanged or in any way badly treated by [Spicer]" and denied having "any grudge" against him." (*Id.* at 59.) Lyles stated that he did not see Petitioner "fire a shot" and did not see anyone inside Spicer's apartment. (*Id.* at 78, 80.)

The jury ultimately found Petitioner and Lyles guilty on all counts. (ECF No. 14-14 at 60-61.) Petitioner was sentenced to five years' imprisonment for unlawful possession of a pistol by a person under the age of twenty-one; ten years' imprisonment for attempted

4

burglary in the first degree; twenty years' imprisonment for attempted armed robbery; and life in prison for murder.  (*Id.* at 69.)

Petitioner timely appealed his conviction and sentence, but his appeal was denied on October 15, 2008.  The remittitur was issued and filed on November 26, 2008.  (ECF No. 14-4.)

On March 4, 2009, Petitioner filed his first petition for post-conviction relief ("PCR"), alleging the following grounds: (1) ineffective assistance of trial counsel based on counsel's failure to ask for a severance; and (2) violation of Rule 403 of the South Carolina Rules of Evidence pertaining to the trial judge's exclusion of corroborating evidence that the victims were involved in selling marijuana.  (ECF No. 14-14 at 136-44.)  The Honorable J. Mark Hayes II held an evidentiary hearing on May 26, 2010, at which hearing Petitioner was represented by attorney Vanessa Cason ("PCR counsel").  Petitioner, Pastor Cathaye Jones, and Petitioner's trial counsel all testified at the hearing, following which Judge Hayes dismissed the PCR application in a written order dated July 28, 2010. (EFF No. 14-15 at 48-56.)

Petitioner appealed, and his appellate counsel, Robert M. Pachak ("appellate counsel"), filed a petition for writ of certiorari pursuant to *Johnson v. State*, 294 S.C. 310 (1988), before the South Carolina Supreme Court along with a petition to be relieved as counsel. (ECF No. 14-5.)  Petitioner raised the sole ground of whether trial counsel was ineffective for failing to request that the trial be severed.  On February 16, 2011, Petitioner also filed a *pro se* petition for writ of certiorari.  (ECF No. 14-7.)  The petition was transferred to the South Carolina Court of Appeals pursuant to Rule 243 of the South Carolina Appellate Court rules and was denied on December 13, 2012.  The remittitur was

issued on January 2, 2013.

Petitioner then filed a writ of habeas corpus in this Court on February 20, 2013.

(ECF No. 1.)  In his initial petition, he raised the following grounds, taken verbatim:

> Ground One: Ineffective assistance of counsel
> Supporting Facts: Failure to advise of the desirability of accepting or rejecting a plea bargain.
>
> Ground Two: Ineffective assistance of counsel
> Supporting Facts: Failure to ask for severance trial.
>
> Ground Three: Ineffective assistance of counsel
> Supporting Facts: Failure to argue changed appearance.
>
> Ground Four: Indictment & information
> Supporting Facts: I did not receive any indictment, warrants, or information for the charges of 1st degree burglary, attempted armed robbery & poss of weapon.

(ECF Nos. 1, 6-1.)

On April 22, 2013, Petitioner filed a motion to stay.  (ECF No. 10.)  On May 29, 2013, Respondent filed a return and motion for summary judgment addressing the initial petition.  (ECF Nos. 14, 15.)  On June 6, 2013, Petitioner filed a motion to amend, along with a second motion to stay.  (ECF Nos. 18, 19.)  In his motion to amend, Petitioner sought to add the following grounds for relief to his petition:

> Ground Five: Petitioner's sentence of life without parole, imposed for a crime he committed when he was a juvenile, violates the Eighth Amendment to the United States Constitution.
>
> Ground Six: Petitioner's sentence of life without parole violates the Eighth Amendment to the United States Constitution because the proceedings which led to its imposition were both procedurally and substantively inadequate.

(ECF No. 18.)

On September 24, 2013, the Court mooted Petitioner's first motion to stay, granted

6

his motion to amend, and granted his second motion to stay, explaining that the amended

petition contained both exhausted and unexhausted claims and that it was appropriate to

stay the matter until Petitioner's second PCR application concluded.  (ECF No. 34.)  As the

Court noted in its order, Petitioner had filed a second PCR application on May 25, 2013.

(ECF No. 23-1.)  In the second PCR action, Petitioner brought several claims related to his

life-without-parole sentence.  Petitioner's second PCR action was ultimately dismissed on

February 2, 2017.  (ECF No. 64-1.)

While Petitioner's second PCR action was pending, he filed a motion to supplement

his original petition, seeking to add the following grounds for relief:

> Ground One: Ineffective assistance of trial counsel
> Supporting Facts: Trial counsel failed to move for a verdict in arrest of
> judgment and entry of judgment of acquittal to prevent entry of judgment for
> amended robbery offense.
>
> Ground Two: Ineffective assistance of counsel
> Supporting Facts: Counsel failed to move for a verdict in arrest of judgment
> and entry of judgment of acquittal to prevent entry of judgment for attempted
> 1st degree burglary.
>
> Ground Three: Ineffective assistance of counsel
> Supporting Facts: Counsel failed to object to solicitor "Golden Rule"
> argument.
>
> Ground Four: Ineffective assistance of counsel
> Supporting Facts: Failed to object to victim impact evidence.

(ECF No. 37.)  Because the matter was stayed at the time, the Court did not rule on the

motion.

On July 27, 2015, Jeter filed a motion for re-sentencing for his 2006 sentence of life

without the possibility of parole for murder while under the age of eighteen, pursuant to

*Aiken v. Byars*, 765 S.E.2d 572 (S.C. 2014) (ECF No. 55.)  On August 2, 2016, the

Honorable Letitia Verdin was assigned by the South Carolina Supreme Court to appoint counsel for Jeter and handle the matter. (ECF No. 64-2.)  On January 14, 2022, Judge Verdin filed a written order re-sentencing Petitioner to fifty years' imprisonment for murder, and the South Carolina Court of Appeals affirmed Petitioner's re-sentencing on May 1, 2024.  (ECF Nos. 125-1, 192).  The remittitur was issued on May 29, 2024.

On June 24, 2024, Petitioner filed a third PCR application, alleging the following claims: (1) ineffective assistance of re-sentencing counsel based on re-sentencing counsel's failure to call witnesses and "ask for minimum"; (2) lack of subject matter jurisdiction based on the trial court's "convict[ion] of a juvenile of an offense that was upgraded"; and (3) miscarriage of justice based on the trial court's purportedly improper jury charge regarding the "natural & probable consequences doctrine."  Petitioner requested relief in the form of re-sentencing or a new trial, and this petition remains pending.[1]

On June 26, 2024, the Court lifted the stay in this case and granted Petitioner's pending motion to supplement.  (ECF Nos. 37, 196.)  To clarify the record, the Court ordered Petitioner to file an amended petition encompassing *all* of the grounds for relief that he wished to pursue in this action, reminding Petitioner that the amended petition would completely replace his original petition and emphasizing that the amended petition must contain all of his allegations and claims in one filing.  (ECF No. 197.)

Petitioner filed his amended petition on August 2, 2024, raising the following grounds for relief, taken verbatim from his petition:

---

[1] *See* https://publicindex.sccourts.org/Spartanburg/PublicIndex/PISearch.aspx (searched by "Joshua Jeter" actions filed beginning on June 23, 2024).  Last visited 6/4/26.

Ground One: Ineffective assistance of PCR counsel
Supporting Facts: Failing to raise ineffective assistance of trial counsel for failing to object to judge's erroneous accomplice liability jury charge that allowed conviction of unindicted offense of armed robbery causing a constructive amendment of indictment in violation of 5th Amendment.

Ground Two: Ineffective assistance of JJ counsel
Supporting Facts: Failing to object to Judge's erroneous jury instruction. Judge told jury they could infer malice from intentional use of a deadly weapon in violation of 14th Amendment.

Ground Three: Ineffective assistance of PCR counsel
Supporting Facts: Failing to raise ineffective assistance of counsel for failing to object to the solicitor's "Golden Rule argument" asking jury to imagine how victim must feel his friend was shot and killed in his apartment.

Ground Four: Ineffective assistance of PCR counsel
Supporting Facts: Failing to raise ineffective assistance of JJ trial counsel for failing to object to victim impact evidence where trial judge let victim father testify and in admitting a photograph of the victim.

(ECF No. 199.)

In response to the amended petition, Respondent filed a motion for summary judgment on October 21, 2024. (ECF No. 208.) Petitioner filed a response to the motion on December 2, 2024. (ECF No. 214.)

After analyzing the issues and reviewing the record, the Magistrate Judge issued her Report on January 6, 2025. Petitioner filed objections to the Magistrate Judge's Report, and the matter is now ripe for this Court's review.

## STANDARDS OF REVIEW

**I.      The Magistrate Judge's Report**

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court

is charged with making a *de novo* determination only of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## II.    Summary Judgment

To grant a motion for summary judgment, the Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

## I.    Habeas Corpus Relief

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained that the "contrary to" and "unreasonable application" clauses have independent meaning. *Id.* at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in controlling cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405-06. A federal habeas court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Id.* at 407-08. Factual determinations made by the state "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II.    Exhaustion and Procedural Bar

Before a Petitioner can obtain relief under § 2254, he must first clear a series of procedural hurdles. For example, a state prisoner must exhaust his state court remedies by "present[ing] his claim to the state's highest court" before a federal court can grant relief on the merits of a claim.[2] *Mahdi v. Stirling*, 20 F.4th 846, 892 (4th Cir. 2021); *Coleman v.*

---

[2] The exhaustion requirement exists to promote comity within our federal system. As the Supreme Court has explained:

Because "it would be unseemly in our dual system of government for a federal district court to upstate  a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one

*Thompson*, 501 U.S. 722, 729-30 (1991).  Thus, "[t]he exhaustion doctrine bars a claim if it is raised for the first time in a federal habeas petition."  *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001) (en banc); *see also Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

In other words, to exhaust a federal habeas corpus claim, a petitioner must "fairly present[ ] to the state court both the operative facts and the controlling legal principles associated with each claim."  *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (citation and internal quotation marks omitted).  This means that a petition must present the claim to the state court "face-up and squarely."  *Id.*  Otherwise, the state will be deprived of its "opportunity to correct the constitutional violation in the first instance." *Id.* (internal quotation marks omitted).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default–often referred to as a procedural bar–one example of which occurs 'when a habeas petitioner fails to exhaust available state remedies and the court to which [he] would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  *Mahdi*, 20 F.4th at 892 (quoting *Breard*, 134 F.3d at 619) (internal quotation marks omitted).  Another way procedural default occurs is when "a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal."  *Breard*, 134 F.3d at 619.

Nevertheless, because the requirement of exhaustion is not jurisdictional, in very

---

court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant on the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 399 U.S. 200, 204 (1950)).

limited circumstances a federal court may consider claims that have not been presented to the highest South Carolina court with jurisdiction. *Granberry v. Greer,* 481 U.S. 129, 131 (1989). Specifically, a federal court may review a procedurally defaulted claim if the petitioner can demonstrate sufficient cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim would result in a miscarriage of justice because the petitioner is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). "Cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n. 24 (1999) (quoting *Murray*, 477 U.S. at 488). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he also must show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. A petitioner must show an actual and substantive disadvantage as a result of the error, not merely the possibility of harm.

As an alternative to demonstrating cause for failure to raise a claim, a petitioner may show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show that he is actually innocent. *See Murray*, 477 U.S. at 496 (holding that a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual

innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

## III.     Ineffective Assistance of Counsel

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense," and that such assistance be effective. U.S. Const. Amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Id.* at 687-98. The first part of the test, a court's evaluation of counsel's performance, must be "highly deferential" under this standard, so as not to "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Fields v. Attorney Gen. of Maryland*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1476 (4th Cir. 1985). To establish prejudice and thereby fulfill the second prong of the ineffective assistance test, the challenging defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694-95. Additionally, as the Supreme Court explained in *Harrington v. Richter*:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential,"[ ], and when the two apply in

14

tandem, review is "doubly" so [ ]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. [ ] Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

562 U.S. 86, 105 (2011) (internal citations omitted). "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* at 101 (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000). Ultimately, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

## IV.    The Magistrate Judge's Findings and Petitioner's Objections

In her Report, the Magistrate Judge found the following: (1) that Petitioner's second ground for relief was procedurally defaulted and that, even if it was not, it lacks merit: (2) that Petitioner's first, third, and fourth grounds for relief were procedurally defaulted and are not "substantial" ineffective-assistance-of-counsel claims to excuse the procedural default.[3] (ECF No. 218 at 17-35.)

Specifically, as to ground two, where Petitioner claims that trial counsel should have objected to an inferred malice jury instruction, the Magistrate Judge explained that Petitioner never raised this claim as a ground for post-conviction relief and that the state records contain no mention of this claim. (*Id.* at 20.) Indeed, the Magistrate Judge noted that Petitioner himself does not dispute that ground two was procedurally defaulted, and the Magistrate Judge ultimately found that Petitioner failed to articulate cause and prejudice

---

[3] Because the Magistrate Judge found all of Petitioner's claims procedurally barred, she did not consider the question of timeliness raised by Respondent. (Id. at 18, n. 7.)

for the procedural default, or to sufficiently explain how the Court's failure to consider the claim would result in a fundamental miscarriage of justice. (*Id.*) In any event, the Magistrate Judge also examined the merits of the claim and found that, even if the claim were not procedurally defaulted, it lacks merit. Specifically, the Magistrate Judge outlined the jury instruction at issue and noted that the instruction (that malice may be implied from use of a deadly weapon) is no longer consistent with South Carolina law. (*Id.* at 21-22.) However, the Magistrate Judge also noted that, at the time of Petitioner's trial in 2006, the implied malice instruction *was* still good law, such that Petitioner cannot demonstrate that his trial counsel was ineffective for failing to object. (*Id.* at 22-23.)

As to grounds one, three, and four, where Petitioner asserts that PCR counsel was ineffective, the Magistrate Judge also found that these claims were procedurally defaulted. In so finding, the Magistrate Judge carefully considered the effect of *Martinez v. Ryan*, 566 U.S. 1, 9 (2012), on these claims and determined that none of the claims was "substantial." Specifically, as to ground one, where Petitioner contends that PCR counsel was ineffective for failing to assert that trial counsel was ineffective for failing to object to an erroneous accomplice liability charge, the Magistrate Judge found no support in the record for Petitioner's argument. (ECF No. 218 at 25-27.) Instead, the Magistrate Judge found that the accomplice liability charge was clearly warranted under the facts of Petitioner's case. (*Id.* at 27-28.) In so finding, the Magistrate Judge carefully outlined the charges given to the jury and found no merit to Petitioner's argument that the accomplice liability charge impermissibly shifted the burden of proof on malice. As such, the Magistrate Judge found no basis to conclude that ground one is a "substantial" claim to excuse Petitioner's procedural default under *Martinez*.

16

Likewise, as to ground three, where Petitioner claims that PCR counsel was ineffective for failing to raise an ineffectiveness claim based on trial counsel's failure to object to the Solicitor's "golden rule" argument (where the Solicitor asked the jury to imagine how the victim must feel), the Magistrate Judge found that Petitioner failed to show that ground three is a "substantial" claim to excuse its procedural default under *Martinez*. (*Id.* at 30-31.) In so finding, the Magistrate Judge agreed with Respondent that the Solicitor did not ask the jurors to place themselves in the position of the victim *and decide the case from that person's perspective*; thus, the Magistrate Judge found it unclear whether the Solicitor violated the "golden rule" in the first place. Nevertheless, the Magistrate Judge explained that the record does not reflect a lack of evidence against Petitioner to support a finding that the Solicitor's isolated comment about Spicer substantially prejudiced Petitioner, and the Magistrate Judge noted the significant evidence presented by the State against Petitioner, including Petitioner's own testimony that confirmed his presence at Spicer's apartment on the night Howze was killed, his wearing of a mask, his carrying of a gun, and his running away after shots were fired. In other words, the Magistrate Judge found no basis to conclude that there is a reasonable probability that Petitioner would have been acquitted but for the Solicitor's remarks. Accordingly, the Magistrate Judge found that ground three lacks merit and should be dismissed.

As to ground four, where Petitioner claims that PCR counsel was ineffective for failing to assert that trial counsel was ineffective for failing to object to victim impact evidence, including a photo of the victim, the Magistrate Judge found that Petitioner failed to show that he was so prejudiced by this testimony and/or the photograph to entitle him to habeas relief. (*Id.* at 32-33.) The Magistrate Judge again considered all of the evidence

17

presented by the State against Petitioner and found it unlikely that any sympathy aroused by the victim impact testimony and photograph influenced the outcome of Petitioner's trial. Thus, the Magistrate Judge found that Petitioner failed to demonstrate that the claim is "substantial" to excuse the procedural default of ground four under *Martinez*.

In his objections to the Report, Petitioner asserts that the Magistrate Judge erred in finding that Petitioner's second ground for relief was both procedurally defaulted and lacks merit. (ECF No. 231 at 2.) Petitioner also objects to the Magistrate Judge's finding that Petitioner's first, third, and fourth grounds for relief were procedurally defaulted and are not "substantial" to excuse their default under *Martinez*. (*Id.*)

In support, Petitioner reiterates the history of his post-conviction relief applications and asserts that it would be futile for him to go back and seek post-conviction relief for these claims because they would be untimely. (*Id.* at 2-3.) Additionally, Petitioner asserts, albeit in a conclusory manner, that his claims should be considered under *Martinez* because they are substantial. (*Id.*)

Next, Petitioner reiterates his claim that PCR counsel was ineffective for failing to assert that trial counsel was ineffective for failing to object to the trial court's actual malice jury instruction. (*Id.* at 4.) According to Petitioner, the instruction improperly shifted the burden, and PCR counsel was ineffective for failing to fully investigate this issue. (*Id.* at 5.)

Petitioner also objects to the Magistrate Judge's reference to *State v. Belcher*, 685 S.E.2d 802, 803 (S.C. 2009), and he asserts that his claim does not depend on *Belcher* but

18

rather on prior Supreme Court precedent.[4]  (*Id.* at 5-7.)  According to Petitioner, there is a genuine issue of material fact in dispute.  (*Id.* at 8)

Lastly, Petitioner objects to the Magistrate Judge's finding that Petitioner was indicted for armed robbery and convicted of the same.  (*Id.*)  Instead, Petitioner asserts that the jury wrote on the verdict form that he was guilty of armed robbery, and he states that "this unindicted offense was used to find [him] guilty of murder under the accomplice liability theory, which is a constructive amendment of an indictment."  (*Id.* at 9.)

Ultimately, after a careful review of the record and after considering the matter *de novo*, the Court is not persuaded by any of Petitioner's objections.  As an initial matter, the Court finds no error in the Magistrate Judge's determination that Petitioner's claims were procedurally defaulted, and, although Petitioner asserts that the procedural default of his claims should be excused under *Martinez*, the Court is not convinced.  Rather, the Court finds that the Magistrate Judge carefully outlined the procedural history and correctly applied the applicable law, and the Court fully agrees with the Magistrate Judge's thorough analysis.

As the Magistrate Judge concluded, Petitioner's second ground for relief was clearly procedurally defaulted.  Furthermore, as the Magistrate Judge also concluded, even if it was not, it lacks merit because Petitioner cannot demonstrate that trial counsel's failure to object to the court's instruction that malice may be implied from use of a deadly weapon

---

[4] The Court notes that the Magistrate Judge specifically considered this argument in footnote 10 of her Report, noting that Petitioner stated his claim was not brought pursuant to *Belcher* but rather pursuant to prior Supreme Court precedent.  (ECF No. 218 at 23, n. 10.)  As the Magistrate Judge properly noted, however: "Petitioner does not offer any cognizable explanation as to how or why these [Supreme Court] cases support a claim that the trial court's inferred malice charge was unconstitutional at the time Petitioner was tried.  As noted, at the time of Petitioner's conviction, the law in South Carolina was that malice could be inferred from the use of a deadly weapon."  (*Id.*)

was ineffective under *Strickland*, for the reasons set forth by the Magistrate Judge.

Similarly, as to grounds one, three, and four, the Court fully agrees with the Magistrate Judge that these grounds were procedurally defaulted, and Petitioner has failed to demonstrate (whether in his pleadings, his objections, or otherwise), that the procedural default should be excused under *Martinez*. As to ground one, for example, the Court agrees with the Magistrate Judge that an accomplice liability charge was warranted under the facts of Petitioner's case; thus, Petitioner cannot demonstrate that his claim is "substantial." As to ground three, the Court agrees with the Magistrate Judge that the record as a whole does not support a finding that there is a reasonable probability that Petitioner would have been acquitted but for the Solicitor's alleged "golden rule" remarks. Therefore, ground three lacks merit and cannot be said to be "substantial" under *Martinez.* Lastly, as to ground four, the Court agrees with the Magistrate Judge that Petitioner has not shown that he was so prejudiced by victim impact testimony and the photograph of the victim to entitle him to habeas corpus relief, particularly in light of the overwhelming evidence presented by the State, including his own testimony.

## CONCLUSION

Based on the foregoing, the Court overrules Petitioner's objections (ECF No. 231); the Court adopts the Magistrate Judge's Report (ECF No. 218); the Court grants Respondent's motion for summary judgment (ECF No. 208) and dismisses this case with prejudice; and the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

June 4, 2026
Charleston, South Carolina

## CERTIFICATE OF APPEALABILITY

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c).  A prisoner satisfies the standard by demonstrating that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable.  *See Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).  Here, the Court finds that the legal standard for the issuance of a certificate of appealability has not been met.  Therefore, a certificate of appealability is denied.